WILLARD LIPE *et al.*, Plaintiffs-Appellants, *v.* FARMERS STATE BANK OF ALTO PASS, ILLINOIS *et al.*, Defendants-Appellees — (FARMERS STATE BANK OF ALTO PASS, ILLINOIS, Counter-Plaintiff Interpleader-Appellee, *v.* WILLARD LIPE *et al.*, Counter-Defendants-Appellants — CLOA BREWER *et al.*, Counter-Defendants-Appellees.)

(No. 69-37;

Fifth District—December 9, 1970.

C. Robert Hall, of Carbondale, for appellants.

Fletcher Lewis and Wolff, Jones & Lawder, both of Murphysboro, for appellees.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

The plaintiff-appellants brought this action against defendant-appellee administrator and the defendant bank for adjudication of plaintiffs' claim to $5,276.79 held by the defendant bank in·a checking account. The plaintiffs are the six children, all of legal age, of decedent Rudolph Lipe who died intestate on October 2, 1967. The defendant administrator, Mabel Lipe, is the decedent's surviving spouse and stepmother to the children. The decedent had no other children. The Farmers State Bank of Alto Pass (hereinafter called the Bank) by way of counter-complaint made the heirs of the decedent, parties to this action and paid into the court the sum in question in the nature of an interpleader. From judgment in favor of the defendant-administrator the plaintiff children appeal.

Decedent, Rudolph Lipe, in 1944 opened a checking account in his name alone at the bank. The account remained in his name alone until March 4, 1965, at which time he went to the bank with his wife, the present administrator, and changed the account by adding, or having added, to the deposit book and the bank account ledger cards "or his children". (There was no agreement signed which would allow this unilateral act to create a joint-tenancy as required by ch. 76, par. 2, Ill. Rev. Stat. 1965 and plaintiffs do now assert a claim on that theory.) The children did not sign "signature" cards at the bank; nor did they attempt to write checks or otherwise obtain monies from the account during his lifetime.

The Cashier of the Bank testified as the only witness for the bank. His testimony that at the time decedent changed the account by adding "or his children" he stated affirmatively that he did not want his children to know of the change, stands uncontradicted in the record. The plaintiffs procured testimony from ten separate witnesses. The defendant administrator put on no evidence. A close perusal of the transcript convinces us that the decedent attempt and indeed thought that he had created an account in which his children would at some future time have an interest. There is much competent testimony from which this intention can be discerned. The testimony indicating the intention may be summed up be quoting from the witness, Bert Hawk, a neighbor, friend and relative of the decedent. Quoting the decedent, Hawk stated,

"* * * me and 'Mabel' has got ours fixed. If I die my children get what I have got * * * *"

We must, however, view what the decedent actually did and not what he wanted to do.

Plaintiffs, admitting no joint tenancy was created, have urged that the trial court erred in failing to hold that the decedent had made either a gift *inter vivos* or a gift *causa mortis,* and in the alternative that the addition of "or his children" created a tenancy in common.

■■ Plaintiffs argue that a gift of a deposit book is a gift of the fund and such gift may be valid as a gift *causa mortis* since delivery of the bank book with intent to deliver the deposit is a good symbolic delivery of the deposit. Whether or not this is appropriate wherein there is a checking account evidenced by a deposit book and not a savings account evidenced by a pass book, in dispute, need not be belabored at length because we are unable to find sufficient evidence of a delivery of the deposit book to any of the claimants. Without delivery there is no presumption of gift to remove the burden of proof from the children.

■■ Delivery constitutes the means through which the intent of the donor is given effect. It consists of irrevocable surrender of dominion and control over the subject matter of the gift to the donor or his agent. *Gordon vs. Gordon,* 113 App.2d 191, 252 N.E.2d 17.

■■ The evidence that is used for the purposes of showing that the decedent desired to create an interest in the acount in his children indicates that he did not wish to make the children a gift of a present interest. The testimony of the plaintiffs' witnesses was consistent in saying that the decedent thought he "had things fixed" so that the children would take at his death. There is no evidence to indicate that the decedent intended the children to have any present interest. The name of the account was changed in March 1965 and the plaintiffs contributed nothing, exercised no control, and it is clear from the record that until some time in the Fall of 1967 that the plaintiffs were unaware of the possibility of their having an interest in the account. There is nothing to show that he did not maintain control until his death. Indeed as stated in *In re Kloss' Estate,* 57 Ill.App.2d 118, 207 N.E.2d 92:

"* * * where the party claiming the existence of an *inter vivos* gift does not attempt to exercise his alleged rights until after the death of the alleged donor, such claim is regarded with suspicion by the courts and must be established by clear and satisfactory evidence."

■■ There is evidence that the decedent when in his last illness, gave to one of the plaintiffs his wallet and check book with instructions to keep them from his wife. There is no indication of donative intent in such instructions, but only an intent to deny property to the wife. We think the trial court correct in failing to find evidence of donative intent. The case of *In re Kloss' Estate, supra,* involved a similar factual situation

wherein the parties were contesting the right to monies in a jointly held safety deposit box. The court in holding for the administrator against the joint tenant stated:

"Respondents final point is that if the leasing agreement (of the safety deposit box) itself is not of itself sufficient to sustain a transfer of title in co-tenancy, it is useful as corroborating evidence of the alleged prior oral gift. This argument, however, assumes that the possession by the respondent of a key to the box was clearly and sufficiently proven which is not the case. If in fact decedent did intend to make a gift to respondent, proof of intent alone is not sufficient to sustain the claim of a completed gift."

Plaintiffs next contend that decedent created a tenancy in common by placing a bank account in two or more names without the fulfilling of the statutory requirements for the creation of a joint tenancy. This contention is based on the language found in ch. 76, par. 2., Ill. Rev. Stat. 1965, which provides:

"Except as to executors and trustees, and except also where by will or other instrument in writing expressing an intention to create a joint tenancy in personal property with the right of survivorship, the right or incident of survivorship as between joint tenants or owners of personal property is hereby abolished, *and all such joint tenancies or ownerships shall, to all intents and purposes, be deemed tenancies in common.*" (Emphasis supplied.)

and language found in *Frey v. Wubbena,* 26 Ill.2d 62, 185 N.E.2d 850. The *Frey* case involves many different kinds of personal property. The decedent in that case was attempting to keep the property from his wife, his daughter's stepmother, as was the present decedent.

The court there concluded that when the decedent had placed the names of his two children on *the savings account* and had delivered the *pass books,* donative intent was shown. The named daughters were held to be tenants in common, in the savings account. This is not our case on appeal. Here the children were not named and delivery of the *deposit book* was not shown.

■■ We have been faced with the problem of a decedent who obviously intended to pass his property to his children upon his death but did not intend to make an *inter vivos* gift and failed to make a gift *causa mortis* because of the failure of delivery. What we have is an attempted testamentary disposition that must fail.

The judgment is affirmed.

G. MORAN and GOLDENHERSH, JJ., concur.