ENOLA STEVENS FRANKLIN, as Ex'r of the Estate of Frank A. Whitehead, Deceased, Plaintiff and Counterdefendant-Appellant, v. THE ANNA NATIONAL BANK OF ANNA, Defendant and Counterplaintiff (Enola Stevens Franklin, Ex'r of the Estate of Frank A. Whitehead, Deceased, *et al.*, Counterdefendants; Cora T. Goddard, Intervening Counterplaintiff-Appellee).

Fifth District   No. 5—85—0308

Opinion filed February 10, 1986.—Rehearing denied February 27, 1986.

C. Robert Hall, of Carbondale, for appellant.

William Rudert and James L. Karraker, both of Law Office of James L. Karraker, of Anna, for appellee.

JUSTICE WELCH delivered the opinion of the court:

Plaintiff, Enola Stevens Franklin, as executor of the estate of Frank A. Whitehead, deceased, commenced this action in the circuit court of Union County against defendant Anna National Bank, alleging that the funds in a joint savings account were the property of the estate. The bank interpleaded Cora Goddard, who asserted her right to the money as the surviving joint owner. After a bench trial, the circuit court entered judgment for Mrs. Goddard. Mrs. Franklin appeals. We reverse.

This is the second time this case has been before the appellate court. In the prior appeal, Mrs. Franklin appealed from summary judgment in favor of Mrs. Goddard. This court reversed and remanded for trial. *Franklin v. Anna National Bank* (1983), 115 Ill. App. 3d 149, 450 N.E.2d 371.

Decedent died December 22, 1980. His wife Muriel Whitehead died in 1974. Mrs. Goddard was Muriel's sister. Decedent had eye surgery in May of 1978, and according to Mrs. Goddard was losing his eyesight in 1978. In April of 1978 Mrs. Goddard moved to Union County to help decedent and live with him. On April 17, 1978, Mrs. Goddard and decedent went to the bank, according to Mrs. Goddard to have his money put in both their names so she could get money when they needed it, "and he wanted me to have this money if I outlived him."

A bank employee prepared a signature card for savings account No. 3816 and Mrs. Goddard signed it. A copy of this card was in evidence at trial. The signatures of decedent and Mrs. Goddard appear on both sides of the card. It appears that Muriel Whitehead's signature was "whited out" and Mrs. Goddard's signature added. The front of the card states that one signature is required for withdrawals. The back of the card states that all funds deposited are owned by the signatories as joint tenants with right of survivorship.

Mrs. Goddard testified that she did not deposit any of the money in savings account No. 3816. She made no withdrawals, though she once took decedent to the bank so he could make a withdrawal. According to Mrs. Goddard, on the day she signed the signature card decedent "asked me if I needed my money because they had bought cemetery lots from me, and I told him, not at this time, that I didn't need it. He wanted to know if I needed any more money at that time and I said, no, and I said, just leave it in here and I will get it out whenever I need it." According to Mrs. Goddard, decedent promised to pay her $1,000 for the lots; she was never paid. Asked whether she ever had the passbook for savings account No. 3816 in her possession, Mrs. Goddard answered, "Only while I was at Frank's. It was there."

Later in 1978, Mrs. Franklin began to care for decedent. In January 1979, decedent telephoned the bank, then sent Mrs. Franklin to the bank to deliver a letter to Mrs. Kedron Boyer, a bank employee. The handwritten letter, dated January 13, 1979, and signed by decedent, stated: "I Frank Whitehead wish by Bank accounts be changed to Enola Stevens joint intendency [sic]. Nobody go in my lock box but me." According to Mrs. Franklin, Mrs. Boyer told her to tell decedent he would have to specify what type of account he was referring to. Decedent gave Mrs. Franklin a second letter which Mrs. Franklin delivered to Mrs. Carol Williams at the bank (Mrs. Boyer was absent). This handwritten letter, dated January 13, 1979, stated: "I Frank Whitehead want Enola Stevens and me only go in my lock box. Account type Saving and Checking. In case I can't see she is to take care of my bill or sick." According to Mrs. Franklin, Mrs. Williams said she would take care of it and give the letter to Mrs. Boyer. Mrs. Franklin testified that she signed the savings passbook in the presence of decedent and Mrs. Boyer. Mrs. Franklin took her present last name on May 8, 1979.

Mrs. Boyer, Mrs. Williams, and bank president Delano Mowery all testified at trial. These witnesses explained the usual procedures for account changes. None remembered much of the circumstances surrounding the bank's receipt of the January 13, 1979, letters. Accord-

ing to Mr. Mowery, the bank would not remove a signature from a signature card based on a letter; the most recent signature card the bank had for savings account No. 3816 was signed by decedent and Mrs. Goddard.

Mrs. Goddard's attorney's assertion at trial that there were no monthly statements on savings account No. 3816 was uncontradicted.

The trial court found that Mrs. Goddard was the sole owner of the funds in savings account No. 3816 by right of survivorship as surviving joint tenant, and that no part of the funds became part of decedent's estate.

Mrs. Franklin argues that decedent did not intend to make a gift of savings account No. 3816 to Mrs. Goddard.

■ The instrument creating a joint tenancy account presumably speaks the whole truth. In order to go behind the terms of the agreement, the one claiming adversely thereto has the burden of establishing by clear and convincing evidence that a gift was not intended. (*Murgic v. Granite City Trust & Savings Bank* (1964), 31 Ill. 2d 587, 590, 202 N.E.2d 470, 472.) Each case involving a joint tenancy account must be evaluated on its own facts and circumstances. (*In re Estate of Hayes* (1971), 131 Ill. App. 2d 563, 568, 268 N.E.2d 501, 505.) The form of the agreement is not conclusive regarding the intention of the depositors between themselves. (*In re Estate of Schneider* (1955), 6 Ill. 2d 180, 186, 127 N.E.2d 445, 449.) Evidence of lack of donative intent must relate back to the time of creation of the joint tenancy. (*In re Estate of Stang* (1966), 71 Ill. App. 2d 314, 317, 218 N.E.2d 854, 856.) The decision of the donor, made subsequent to the creation of the joint tenancy, that he did not want the proceeds to pass to the survivor, would not, in itself, be sufficient to sever the tenancy. (*In re Estate of Zengerle* (1971), 2 Ill. App. 3d 98, 101, 276 N.E.2d 128, 130.) However, it is proper to consider events occurring after creation of the joint account in determining whether the donor actually intended to transfer his interest in the account at his death to the surviving joint tenant. *In re Estate of Guzak* (1979), 69 Ill. App. 3d 552, 555, 388 N.E.2d 431, 433.

We examine the instant facts in light of the above principles: There appears no serious doubt that in January of 1979, just nine months after adding Mrs. Goddard's name to savings account No. 3816, decedent attempted to remove Mrs. Goddard's name and substitute Mrs. Franklin's. The second of decedent's handwritten letters to the bank in January of 1979 indicates decedent's concern that he might lose his sight and be unable to transact his own banking business. These facts show that decedent made Mrs. Goddard (and later

Mrs. Franklin) a signatory for his own convenience, in case he could not get his money, and not with intent to effect a present gift. (See *Dixon National Bank v. Morris* (1965), 33 Ill. 2d 156, 159, 210 N.E.2d 505, 506; *In re Estate of Guzak* (1979), 69 Ill. App. 3d 552, 388 N.E.2d 431.) It does not appear that Mrs. Goddard ever exercised any authority or control over the joint account. (See *In re Estate of Guzak* (1979), 69 Ill. App. 3d 552, 388 N.E.2d 431.) While decedent's statement that he wanted Mrs. Goddard to have the money in the account if she outlived him suggests decedent's donative intent, taken literally decedent's statement is inconsistent with intent to donate any interest during decedent's lifetime. (See *Lipe v. Farmers State Bank* (1970), 131 Ill. App. 2d 1024, 1026, 265 N.E.2d 204, 205.) Mrs. Goddard does not argue that there was a valid testamentary disposition in her favor, nor could we so find on the instant facts.

Of the many cases cited by the parties for comparison with the case at bar, the most persuasive is *In re Estate of Schneider* (1955), 6 Ill. 2d 180, 127 N.E.2d 445. In *In re Estate of Schneider*, the decedent's executor filed a petition alleging the funds in joint bank accounts belonged to the estate and not to Ralston, the surviving joint tenant. Ralston testified that all of the money in the account was deposited by the decedent, that the decedent at no time told Ralston he wanted Ralston to have any of the money, and that when Ralston's name was added to the accounts the decedent said, "I want your name on these bank accounts so that in case I am sick you can go and get the money for me." The trial court concluded that the decedent intended to retain actual ownership of the money. Our supreme court agreed. We reach the same conclusion here. In the case at bar, decedent's attempts to change the account show his consistent view of the account as his own. The surrounding circumstances show decedent's concern for his health and his relatively brief use of Mrs. Goddard (and later Mrs. Franklin) to assure his access to his funds. The money in account No. 3816 should have been found to be the property of the estate.

For the foregoing reasons, the judgment of the circuit court of Union County is reversed, and this cause is remanded for entry of judgment in favor of plaintiff.

Reversed.

KARNS and HARRISON, JJ., concur.