RICHARD ALTIERI, Petitioner-Appellant, v. ESTATE OF HELEN M. SNYDER, a Disabled Person, Respondent-Appellee.

First District (5th Division)    No. 1—90—0256

Opinion filed December 4, 1992.—Rehearing denied January 6, 1993.

Richard Altieri, of Chicago, appellant *pro se.*

Jean A. Adams, of Dolton, for appellee.

JUSTICE GORDON delivered the opinion of the court:

Petitioner, Richard Altieri, administrator of the estate of Helen Snyder, deceased, appeals from the trial court's order overruling objections he filed in the estate of Helen Snyder, a disabled person, and approving the final account in the disabled person's estate. For the reasons set forth below, we affirm the trial court.

Helen Snyder was married to Jacob Snyder, who died in 1970. Shortly after her husband's death, Helen Snyder asked her son Jack Snyder and his wife Anne to move into the Snyder residence, which they did. Helen, with the assistance of her attorney, placed the property in joint tenancy with her son.

By 1978, Helen Snyder had become senile. In November 1978, Jack Snyder filed a petition seeking to have his mother declared incompetent and for the appointment of a guardian. On January 29,

1979, letters of office were issued to Jack Snyder appointing him plenary guardian of his mother's estate. Helen Snyder died one month later, on February 24, 1979.

At the time of her death, Helen Snyder owned, among other things, three bank accounts at Amity Federal Savings and Loan, Evergreen Plaza Bank, and Home Federal Savings, and a certificate of deposit (CD) at Talman Federal Savings and Loan Association in joint tenancy with her daughter-in-law, Anne Snyder. The total value of these accounts and CD was approximately $21,000. These accounts had been established at various times in 1971 through 1976, following the death of Jacob Snyder. After his appointment as guardian but prior to Helen Snyder's death, Jack Snyder without order of court withdrew funds from the Amity and Talman accounts and deposited the money in a guardian's account.

Helen Snyder also owned several United States Series H Savings bonds, which were held in the name of "Helen Snyder or Jack Snyder." The bonds had an aggregate face value of $42,500. In March 1979, after the death of Helen, Jack Snyder caused the bonds to be reissued in the name of "Jack Snyder or Anne Snyder."

It is the propriety of the guardian's actions with respect to these bank accounts, the certificate of deposit and bonds which is at issue in this appeal.

Following his appointment as guardian, Jack Snyder retained legal counsel who, at the time, was suffering from brain cancer and was frequently confused and forgetful. While represented by this counsel, Jack Snyder filed an inventory and two accounts. The first account was filed on June 6, 1979, and was entitled "First and Final Account" (First Account). He filed the second account, entitled "Amended and Corrected Final Account" (Amended Account) on April 3, 1980.

The inventory listed, among other things, that the bank accounts and bonds were the assets of Helen Snyder, with no indication that they were held in joint tenancy. The First Account was consistent with the inventory in regard to the Amity Federal and Evergreen Plaza accounts as well as the Talman Federal CD. As to the Home Federal Savings bank account, however, the First Account showed that this item was held by Helen Snyder in joint tenancy with Anne Snyder, and that the joint tenancy was terminated by Helen Snyder's death. As a result, the Home Federal account was not listed as an asset of the disabled person's estate. The bonds were listed as held in joint tenancy with Jack Snyder and were not included in the assets of the disabled person's estate.

Petitioner, on behalf of Bertha Van Cleave, the residuary legatee

under Helen Snyder's will, was given leave to intervene in the guardianship proceeding, and to file objections to the First Account. In answering these objections, Jack Snyder stated, in regard to the Home Federal Account and the bonds:

"[A]t the time the said Inventory was filed on behalf of Jack Snyder, he was unable to determine whether this property was a sole asset of the decedent or in joint tenancy with others. Subsequently to the filing of the Inventory, it was determined that certain assets were in joint tenancy."

The court ordered the First Account stricken and granted the guardian leave to file an amended account. The Amended Account was consistent with the First Account regarding the ownership of the assets in question here. In objections to the Amended Account, petitioner contended that the inventory established that these assets were the sole assets of Helen Snyder. He urged the court to compel the guardian to file a "true, correct and complete Final Account, listing all of the assets belonging to the Disabled Person as inventoried."

In answer to objections to the Amended Account, the guardian stated that the joint bank accounts "were held jointly as a matter of convenience and are assets of the disabled person."

In June 1980, prior to any resolution of the objections to the Amended Account, the guardian's original attorney was allowed to withdraw and was replaced by one of his associates, Howard Bernstein. In November 1980, this attorney withdrew and was replaced by J. Sterling Mortimer.

The guardian was given leave to file an amended inventory in November 1980. The amended inventory listed the bank accounts and the CD at issue here, including, for the first time, the Amity, Evergreen Park and Talman accounts, in the names of Helen M. Snyder and Anne Snyder as joint tenants. Attached as exhibits to the amended inventory were copies of the signature cards for the joint accounts and a copy of the certificate of deposit. The bonds at issue were listed as held in the names of "Mrs. Helen M. Snyder or Jack A. Snyder."

Objections were filed to the amended inventory. The objector again contended that the bank accounts and bonds were the sole property of Helen Snyder, based upon their being listed as such in the original inventory and that neither Jack nor Anne Snyder had filed claims or petitions claiming the alleged joint assets. The court approved the amended inventory over the objections of the petitioner but without prejudice to his right to contest the ownership of the jointly held property.

On September 6, 1984, Jack Snyder filed his third account, entitled "Final Account." This account was consistent with the amended inventory and did not include the jointly held property. At the same time, Jack Snyder also transferred the funds which he had improperly withdrawn from two jointly held bank accounts in February 1979 to an escrow account maintained by Mortimer.

Hearings on the objections to the final account were held at various times over a five-year period. Among those testifying was the guardian, Jack Snyder. Before cross-examination could be completed, however, he suffered a heart attack and was excused from further testimony. The court thereupon also struck all his previous testimony. The objector then asked for the removal of Jack Snyder as guardian and the appointment of a public guardian in his stead, alleging as his reason the inability of Jack Snyder to offer testimony to prove his final inventory and accounting. The court denied the objector's request.

Anne Snyder testified regarding the bank accounts of which she was a joint tenant. She stated that these accounts were established, with the assistance of Helen Snyder's attorney following the death of Jacob Snyder. She also testified that Helen Snyder had referred to the money in the joint accounts as "hers and mine," and that Helen Snyder had desired that she (Anne) have the money after Helen's death. She also identified joint signature cards for those accounts.

Upon cross-examination, petitioner asked Anne Snyder whether Mortimer was her attorney. She responded that she and her husband had hired Mortimer for the entire case, including the recovery of the joint accounts. The objector moved to disqualify the guardian's attorney on the grounds of conflict of interest, arguing that Mortimer was not only representing the guardian but was also representing Anne and Jack Snyder individually. Mortimer, however, stated that he represented only the guardian, not Jack or Anne Snyder individually. The court also conducted its own examination of Anne Snyder. The court asked "did you hire Mr. [Mortimer]?" She responded, "No, I did not. As I said before, I thought the proper word was, we. My husband had actually—." Convinced that there was no conflict of interest, the court denied the objector's motion.

Jean Adams, an associate of the guardian's attorney Mortimer, also testified. She stated that in September 1984, the money which the guardian had earlier withdrawn without court permission from two accounts held jointly by Helen and Anne Snyder had been deposited in a client escrow account. The court ordered that the funds be returned to the guardian's account pending resolution of the objections filed to the final account.

Margaret Tufo, manager of the savings bond division of the Federal Reserve Bank of Chicago, testified in answer to subpoena from the guardian. She identified bonds which had been issued in 1970 to "Helen or Jack Snyder." Those bonds were reissued in 1979, upon request of Jack Snyder and presentation of Helen Snyder's death certificate, in the name of Jack or Anne Snyder.

Also called to testify was Howard Bernstein, an associate of the guardian's original attorney. The guardian, however, asserted his attorney-client privilege to prevent Bernstein from testifying to conversations between the guardian and his attorney regarding preparation of the original inventory and the first two accounts filed. The court overruled the objector's argument that the privilege had been waived by the guardian's original indication that he would not assert his attorney-client privilege. This earlier indication was attributed to a mistaken belief that a third party was present during the conversations, thereby depriving them of the requisite confidentiality.

Bernstein did, however, testify that at the time the original attorney represented Jack Snyder, the attorney was not functioning at a competent level.

On August 25, 1989, Judge Czaja, who had conducted the hearings, overruled the objections and approved the final account. On September 22, 1989, the objector filed a petition to vacate and reconsider the August 25 order. In the interim, Judge Czaja was reassigned to another division of the circuit court. The petitioner thereupon sought to have his petition to vacate transferred to Judge Czaja in order to avoid having to ask one judge to vacate the order of another judge. The petition to transfer the matter to Judge Czaja was denied. The petition to vacate was also denied, in an order stating, in part:

> "IT IS HEREBY ORDERED that the order of 8-25-89 of Judge Czaja approving Guardian's Final Account was substantiated by testimony and the evidence, and the Objector's Petition to Vacate and Reconsider Order of 8-25-89 is denied.
>
> IT IS FURTHER ORDERED that the 3 joint tenancy accounts in the names of Helen M. Snyder and Anne Snyder, as joint tenants with rights of survivorship were valid joint tenancy accounts and that Anne Snyder is entitled to funds in those accounts or funds traced to said accounts; It is further ordered that U.S. Savings Bonds (H Bonds) held in names of Helen M. Snyder or Jack Snyder rightfully belonged to Jack Snyder at date of Helen Snyder's death."

OPINION

On appeal, petitioner contends that numerous errors occurred at trial. We shall first address the contention that the court's approval of the final account was against the manifest weight of the evidence. Petitioner argues that the guardian failed to show Helen Snyder's donative intent regarding the assets in question, and as a result, did not meet his burden of proof to overcome the objections regarding the bank accounts and the bonds which were listed as held in joint tenancy. He also argues that the accounts and bonds must be considered assets of the deceased person's estate since neither Jack nor Anne Snyder filed claims to assert their rights to the disputed accounts.

When objections are made to a guardian's account, the guardian has the burden of proving that the items objected to were just and proper. (*In re Estate of Murphy* (1987), 163 Ill. App. 3d 380, 383, 516 N.E.2d 664; *In re Estate of Roth* (1974), 24 Ill. App. 3d 412, 416, 321 N.E.2d 81.) In determining whether that burden has been met, we will not substitute our judgment for that of the trial court unless the record indicates that the decision is against the manifest weight of the evidence. *In re Estate of Berger* (1987), 166 Ill. App. 3d 1045, 1057, 520 N.E.2d 690.

■ Instruments creating joint accounts are considered *prima facie* evidence of donative intent. *(Murgic v. Granite City Trust & Savings Bank* (1964), 31 Ill. 2d 587, 590, 202 N.E.2d 470 ("a *prima facie* presumption of donative intent exists where the proof shows that the making of the deposit and the execution of the contract is in conformity with the statute"); *Franklin v. Anna National Bank* (1986), 140 Ill. App. 3d 533, 536, 488 N.E.2d 1117.) Although not conclusive, in the absence of contrary evidence the deposit agreement is sufficient to establish ownership in the survivor of the joint tenants. *In re Estate of Schneider* (1955), 6 Ill. 2d 180, 187, 127 N.E.2d 353.

■ In regard to the United States Savings Bonds, Illinois law provides:

> "If any such non-transferable bond, debenture, note or other obligation of the United States of America be made payable to two persons, in the alternative, such bond or other obligation shall, upon the death of either person, if such bond or other obligation is then outstanding, become the property of and be payable to the survivor of them." Ill. Rev. Stat. 1989, ch. 76, par. 2(e).

See also *Alexander v. Mermel* (1960), 27 Ill. App. 2d 281, 169 N.E.2d 569.

■ Here, attached as exhibits to the guardian's amended inventory were the signature cards establishing the accounts held jointly with Anne Snyder. Also included was a copy of the certificate

of deposit held by Helen and Anne Snyder jointly. During her testimony Anne Snyder also identified those signature cards. This evidence alone would be sufficient to establish donative intent on the part of Helen Snyder and to establish ownership in Anne Snyder. (*In re Estate of Schneider* (1955), 6 Ill. 2d 180, 127 N.E.2d 353; *Murgic*, 31 Ill. 2d 587, 202 N.E.2d 470.) In addition, Anne Snyder further testified that Helen Snyder told her that Anne was to have the funds after Helen's death, and that the funds were "hers and mine."

Regarding the bonds, Margaret Tufo of the Federal Reserve Bank testified that the bonds were originally issued in the name of Helen or Jack Snyder. As a result, pursuant to statute and case law, upon Helen Snyder's death, they became the property of and payable to the survivor, Jack Snyder.

Although there was evidence which might indicate that the assets in question were not true joint tenancy accounts, we cannot say that the trial court's finding in this regard was against the manifest weight of the evidence. The assets were listed in the original inventory without any indication that they were held in joint tenancy. However, with the exception of the Snyder residence (the ownership of which is not at issue here), the original inventory did not define the degree or nature of the disabled person's ownership interest in any of the items listed.

As the guardian stated in his response to petitioner's objections to the First Account, at the time the original inventory was filed, he was unable to determine whether certain properties were the sole assets of Helen Snyder or were held in joint tenancy. Subsequent to the filing of the inventory it was determined that they were held in joint tenancy.

Moreover, the mere fact that these assets were listed in the original inventory as assets of Helen Snyder is not dispositive. An inventory does not determine the rights to the assets included therein. *Ilg v. Continental Illinois National Bank & Trust Co.* (1968), 94 Ill. App. 2d 143, 148, 236 N.E.2d 316 ("The inventory constitutes an initial listing of assets, title to which may or may not in fact be in the decedent." The filing of an inventory "involves a preliminary investigation to determine probabilities, and not ultimate rights").

It is true that the guardian, in answer to objections to his Amended Account, stated that certain bank accounts were held jointly as a matter of convenience and were the assets of the disabled person. The guardian, however, later explained that mistakes had been made in the original inventory and the First and Amended Accounts, and he filed the amended inventory and final account in an effort to correct those mistakes. In addition, the joint accounts in

question here were established, with the assistance of an attorney after the death of Jacob Snyder, years before Helen Snyder became disabled. Anne Snyder, the joint tenant, testified that Helen Snyder referred to the accounts as "hers and mine" and indicated that Anne was to have the funds after Helen's death. Petitioner's argument rests primarily on the fact that the disputed items were filed in the original inventory, an inventory which admittedly contained errors and was prepared under the direction of counsel who was suffering from an illness which adversely affected his abilities.

Petitioner also relies on the fact that neither Jack Snyder nor Anne Snyder filed a claim to the joint bank accounts or bonds which were listed in the original inventory. (*Ilg v. Continental Illinois National Bank & Trust Co.*, 94 Ill. App. 2d at 147 ("[o]nce such [an] asset has been inventoried in an estate, the burden then devolves upon the party who likewise claims title to or an interest in the asset to take such necessary and timely steps to preserve whatever interest he may have therein").) The burden on the guardian to justify his final account in such a case, however, is no greater than it would be had such a claim been filed. *In re Estate of Berger*, 166 Ill. App. 3d at 1056 ("[i]f the conservator pays out money without having a claim filed, upon objection being filed to his report he has the burden of making as complete and satisfactory proof as would have been required had the individual filed a claim, made proof, and obtained an order of court for the payment of the claim").

When viewed in context of the entire record, we cannot say that the trial court's finding that the accounts and bonds in question were held in true joint tenancy is contrary to the manifest weight of the evidence. Accordingly we affirm the trial court's order overruling petitioner's objections.

Petitioner also raises several other issues which we shall discuss briefly. He argues that the trial court erred in refusing to disqualify Mortimer as attorney for the disabled person's estate due to a conflict of interest. He contends that Mortimer was not acting to protect the disabled person's estate, but was representing Jack and Anne Snyder in their efforts to recover the joint accounts and bonds.

■ An attorney-client relationship arises only when both the attorney and client have consented to its formation. (*York v. Stiefel* (1982), 109 Ill. App. 3d 342, 348, 440 N.E.2d 440.) The evidence here does not compel a conclusion that there was such consent between Mortimer and either Anne or Jack in his individual capacity. Anne Snyder, under cross-examination by petitioner, said that she and her husband had hired Mortimer for the entire case, including the recovery of the joint accounts. However, when asked by the court

"did you hire Mr. [Mortimer]?" she responded, "No, I did not. As I said before, I thought the proper word was, we. My husband had actually—." In addition, Mortimer stated that he was not representing either Anne Snyder or Jack Snyder individually. Where the evidence is conflicting, we will not disturb the trial court's determination by substituting our own judgment for that of the trial court who heard and had an opportunity to view the witnesses, unless the trial court's determination is unsupported by the evidence. (*Wood v. Wanecke* (1980), 89 Ill. App. 3d 445, 449, 411 N.E.2d 1063.) We cannot say that the court's conclusion that there was no conflict is unsupported by the evidence, and therefore find no error in the court's refusal to grant the motion to disqualify.

Moreover, we would be reluctant to sustain petitioner's motion for disqualification because of the fact that it was presented at such a late date. Delay in objecting to an attorney representing an opposing party on the grounds of conflict may be considered as a waiver of the right to object. (*First National Bank v. St. Charles National Bank* (1987), 152 Ill. App. 3d 923, 932, 504 N.E.2d 1257 ("defendant's failure to raise this issue in the trial court at an earlier time effectively waives the right to object to plaintiff's counsel on conflict of interest grounds").) When a motion to disqualify is presented, we must apply a balancing test, weighing the ethical considerations against the prejudice to the party who would be forced to find new counsel at the stage in the proceedings at which disqualification is sought. *Roth v. Roth* (1980), 84 Ill. App. 3d 240, 244, 405 N.E.2d 851 ("applying a balancing test *** we think that defendant's interest in continuing with his chosen attorney who has spent two years preparing a complex defense for trial, far outweighs any adverse effect to the administration of justice").

Mortimer began his representation of the guardian in 1980. It was not until 1984 that petitioner sought to disqualify him. The significant prejudice to the guardian which would have resulted from the disqualification in the midst of the hearings of the attorney who had represented him for four years is obvious. On the other hand, there is little in the record to indicate a sufficiently countervailing detriment to the parties or the orderly administration of justice to warrant the disruption which would ensue if at that point the estate were compelled to switch to another counsel.

■ Petitioner also asks this court to appoint a public guardian to settle the guardianship, an action which he contends is necessary due to Jack Snyder's being excused from testifying in this matter for health reasons. Petitioner argues that once the court found Jack Snyder unable to testify, he became unable to discharge his duties as

guardian since he could not prove that his final account was just and proper. As discussed above, however, such proof was offered as to the items objected to from other sources, including the testimony of Anne Snyder and Margaret Tufo. Moreover, the appointment of a public guardian, as urged by petitioner, would only prolong this case which, considering the relatively modest substantive amounts involved and the costs of litigation including attorney fees incurred, has already gone on far too long.

■ Petitioner also contends that the trial court erred in ruling that communications between the guardian and his attorney were privileged. In his brief before this court, petitioner argues that there is a "suspicion of wrongdoing" by the guardian arising from the guardian's inclusion of items in the original inventory and the subsequent deletion of those items in the amended inventory and final account. He argues that Bernstein, as attorney for the estate and as an officer of the court, had a duty to inform the court of this suspicion. Petitioner, however, did not make that argument before the trial judge. Rather, he took the position that there was no privilege based on the fact that the information in the inventories and accounts became a matter of public record once those documents were filed. He also argued that the guardian had waived whatever privilege there was by his earlier indication that he would not exercise it. As a result of petitioner's failure to raise below his argument regarding the attorney's duty to report suspicions to the court, he has waived it for purposes of appeal. (*Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 324 N.E.2d 417.) Moreover, there is nothing in the record to warrant the conclusion that the guardian was guilty of any wrongdoing. He and his attorney openly admitted that errors had been made in the earlier filings and offered plausible explanations for those errors. He corrected the errors by his amended filings and sufficiently proved the propriety of the amended filings.

■ Petitioner also assigns as error the fact that the trial court did not immediately, upon Helen Snyder's death and his appointment as administrator of her estate, terminate the guardianship and require the guardian to file his final account. He contends that "upon the death of the ward and issuance of letters of office in the ward's deceased estate, the guardian has no further authority except to file his final account and the court loses jurisdiction, except to require that the guardianship shall be immediately settled and closed." It is unclear, however, what petitioner would have the guardian do in this case. The guardian had a duty to file a correct accounting and inventory. (*In re Estate of Murphy* (1987), 162 Ill. App. 3d 222, 514 N.E.2d 1225.) He was aware that there were errors in the original

filings, and the amended filings were attempts to correct those errors. We see no error in the court's handling of this matter.

■ Finally we reject petitioner's claim that the court erred in not transferring his petition for reconsideration to Judge Czaja, the judge who had originally heard and ruled on the case. Petitioner has made no allegations of bad faith or "judge shopping." The record shows that the assignment occurred in the ordinary course of judicial reassignment. As a result, we find no error in the denial of the petition for transfer. *Rowe v. State Bank* (1988), 125 Ill. 2d 203, 214, 531 N.E.2d 1358 (where there is "no evidence of bad faith *** [or] 'judge shopping' [and] the record shows that the cause was assigned to another judge in the ordinary course of judicial reassignment *** the trial court acted within the bounds of its authority in ruling on [defendants'] petition").

Accordingly for all the above reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNULTY, P.J., and MURRAY, J., concur.