No. 2--05--0600                                    filed 4/28/06

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | |
|---|---|
| In re ESTATE OF ROBERT D. SHEA,) | Appeal from the Circuit Court |
| Deceased | )   of Du Page County. |
| | ) |
| | )   No. 03--P--502 |
| (Edward J. Shea, as Ex'r of the Estate of | ) |
| Robert D. Shea, Deceased, Petitioner- | )   Honorable |
| Appellee, v. Mary Brennan, Respondent- | )   Kenneth L. Popejoy, |
| Appellant (William Brennan, Respondent)). | )   Judge, Presiding. |

JUSTICE O'MALLEY delivered the opinion of the court:

Respondent, Mary Brennan, appeals an order ruling that two bank accounts, on which she was listed as a joint tenant with decedent, Robert D. Shea, belong to decedent's estate. Her principal contention is that the court erred in making that finding when petitioner (Edward J. Shea, executor of decedent's estate) failed to show that decedent did not intend to make a gift to respondent effective as of his death. Under *Murgic v. Granite City Trust & Savings Bank*, 31 Ill. 2d 587 1964, a court must presume that when a bank account holder lists another person as a joint tenant on the account, he or she intends to make a gift of a joint tenancy interest in the account to that person. We hold that a party rebuts the presumption by showing by clear and convincing evidence that the account holder did not intend a present gift. We therefore conclude that the court was correct to find that petitioner rebutted the Murgic presumption of a gift. Once a party claiming an account has rebutted the presumption, it must still show entitlement to that account by the preponderance of the evidence. Because petitioner presented substantial evidence that decedent intended the accounts to

be convenience accounts, but respondent presented only minimal evidence that decedent intended her to have the accounts, we hold that the court was correct to rule that the accounts are the estate's. We therefore affirm its judgment.

At the outset, we must decide what evidence we may consider in reviewing this case. We deem to be a part of the evidence a collection of exhibits that petitioner filed as an attachment to his *memorandum of law* in support of his petition for a citation to recover assets against respondent. The record as a whole convinces us that the court considered this collection, or at least some individual exhibits, as evidence despite never having formally admitted any of the exhibits at the evidentiary hearing. Nevertheless, neither party protested the court's use of these exhibits either below or on appeal; in fact, both cite certain exhibits extensively in their appellate briefs. Obviously, the parties have waived any possible claim of error based on the court's use of the exhibits. 188 Ill. 2d R. 341(e)(7). However, we note to the court and parties that they would have simplified our review had they followed established patterns for admitting evidence.

## BACKGROUND

Decedent died on April 11, 2003. His wife had predeceased him, dying on March 7, 2002, and he was survived only by petitioner, his brother. Petitioner became decedent's executor on the death of Mildred Doyle, his original executor. Petitioner petitioned the court to issue a citation to recover assets against respondent, who was named with decedent as joint tenant of two bank accounts, one checking and one savings. He alleged that she was in a fiduciary relationship with decedent, as trustee of a trust decedent created for his own benefit, so she had the burden to prove that any gift from decedent to her was not the result of undue influence. Further, he alleged that decedent had intended the accounts to be convenience accounts and had never intended respondent to have the funds on his death.

Petitioner filed a memorandum of law in support of the petition, to which he attached the collection of exhibits discussed above. These included a transcript of petitioner's deposition of respondent and copies of a check register. In the transcript, respondent asserted that she believed that the money in the accounts was to become hers when decedent died. She said that her belief was based on the legal effect of the joint tenancy. However, when petitioner asked her if, had she wanted, she could have spent all the money in the accounts in 2002 because it was a joint tenancy, she said that she could have. Respondent told petitioner that the savings account contained approximately 30,000. According to the check register, during decedent's life, respondent made one withdrawal from that account, transferring 1,000 to the checking account.

The court granted the petition and issued the citation. At the beginning of the evidentiary hearing on the citation, respondent stipulated that she had not paid gift tax on the money in the two accounts that she held in joint tenancy with decedent, nor had she filed a gift tax return reporting her receipt of the money.

John Doyle, Mildred Doyle's son, testified for the estate. He said that his family and the Sheas had a close relationship and that he knew respondent and her husband as the Sheas' neighbors. He recalled a conversation between his mother and decedent that took place the April, May, or June after decedent's wife died that is, in 2002 . Decedent told Mildred that he needed to have someone to be put on the accounts to pay his bills if he could not, but Mildred told decedent that her health was not good enough to take on the responsibility.

J. Scott Marsik also testified for the estate. He met decedent when they were coworkers at a real-estate company after Marsik became a lawyer, decedent became his client. Marsik recalled that, in October or November of 2002, decedent came to consult him about estate planning and related matters. Decedent wanted to place his real property in a revocable trust, and Marsik drafted the relevant document. That document is a part of the collection of exhibits. It names decedent as the original trustee and respondent as successor trustee. Decedent also expressed concern to Marsik that he would have no one to pay his bills if he

became disabled. He discussed the possibility of solving this problem by adding a friend's or a neighbor's name to an account or accounts.

Petitioner then called respondent. Respondent agreed that decedent had named her the successor trustee of his revocable trust. She had signed a signature card for decedent's bank accounts, thus becoming a joint tenant, in December 2002 or sometime before, which was before she became the trustee. She never deposited money into the accounts. She did nothing with the checking account until April 2003, when she wrote 15 checks on it for decedent's expenses. She stipulated that after decedent died, she closed the accounts and transferred the money into an account she held jointly with her husband. She testified that she never did any transactions with the savings account until she closed it. However, as indicated above, the copy of the check register for the period in which she was writing checks on the checking account shows one notation of a 1,000 deposit from Sav., and it also shows that the balance of the account was always below 2,000.

In closing, petitioner argued that all the evidence pointed toward decedent having added respondent to the accounts as a convenience. He argued that respondent's failure to list the accounts as a gift on a tax return showed that she also saw it as a convenience. Finally, he argued that, because respondent was decedent's fiduciary, any presumption of a gift vanished because she had to overcome a presumption that such a gift would be the result of undue influence.

On March 22, 2005, the court issued a letter opinion. It found that petitioner had rebutted the Murgic presumption of a gift by clear and convincing evidence. It ruled that the evidence clearly showed that decedent intended the accounts as convenience accounts. It found facts showing that decedent intended to create convenience accounts. These included that after his wife died, decedent put all his assets except the two bank accounts into a revocable trust and that respondent was not decedent's first choice as joint tenant--he first approached Mildred Doyle to serve. The court listed six further bases for its finding—respondent never

contributed to either account; (2) she never used the money in the accounts for herself while decedent was alive; (3) she used the checking account only in April 2003, the month decedent died, when she wrote 15 checks covering his expenses; (4) respondent could not provide any evidence that decedent intended the funds as a gift; (5) she did not file a gift tax return or pay a gift tax on the money; and (6) she did not exercise exclusive control over the funds until decedent died, when she put the money into a certificate of deposit.

Respondent moved to reconsider. She argued, among other things, that the burden was on petitioner to show not only that decedent intended to use the accounts as convenience accounts while he was alive, but also that he intended his estate, and not respondent, to have them when he died. At the hearing on the motion, her attorney asserted that her nonfiling of a gift tax return had to be viewed in that context:

The fact that she only wrote checks for him would not affect the joint tenancy as to what's going to happen upon his death.

She never filed a gift tax return because there was no completed gift. If all the money had been used for him during his lifetime, there never would have been a gift to her, which is very possible, and that she did not have exclusive control of it she did not have, until he died.

Respondent noted that petitioner had never produced evidence that decedent had said that he wanted the money in his estate when he died. Further, petitioner did not produce anything decedent wrote showing such intent.

The court denied the motion to reconsider and granted petitioner's motion for turnover of funds. On appeal, respondent argues that petitioner failed to overcome by clear and convincing evidence *Murgic's* presumption of a gift. Her position is that petitioner could overcome this presumption only by showing that decedent not only intended the accounts to function as convenience accounts while he was alive, but also that he did not intend her to have the funds when he died. She positively asserts that she believed that she was to own the accounts only when decedent died. It was Mary Brennan's understanding that when Robert Shea died that

the proceeds of the joint accounts would be hers. Consistent with this, she asserts that she did not file a gift tax return because the gift was not effective until decedent died. However, she does not explicitly assert that this was the arrangement that decedent in fact intended, only that petitioner must prove that this was not decedent's intent.

Respondent also claims that a series of specific flaws existed in petitioner's evidence. She contends that, if decedent did <u>not</u> intend to make a gift, then, after consulting with Marsik, he should have known how to make that intention clear. She also contends that Marsik was not a credible witness because he was motivated to slant his testimony to protect his professional reputation. Next, she contends that the fact that decedent asked Mildred Doyle to be on the account is not evidence that he did not intend a gift. Finally, she asserts that the court should not have considered her nonfiling of a gift tax return as evidence that she did not treat the accounts as a gift.

### ANALYSIS

As we will discuss, respondent is incorrect that, to overcome the presumption that the accounts were a gift, petitioner must show that decedent did not intend for respondent to have the accounts when he died. Consequently, we conclude that petitioner's evidence was sufficient for the court to find that he overcame the <u>Murgic</u> presumption of a gift by clear and convincing evidence. Further, we do not consider any of the flaws to which respondent points in the evidence to be a basis for reversal.

We start by analyzing the precise nature of the presumption that a person who adds a joint tenant to his or her bank account intends a gift to that person. We conclude that clear and convincing evidence that the original tenant intended <u>any</u> <u>kind</u> of ownership other than pure joint tenancy overcomes the presumption. Next, we review the evidence in light of the presumption, concluding that the evidence was sufficient to overcome the presumption. We then review

respondent's assorted claims that the court gave improper weight to certain evidence and hold that none of them affects our conclusion that the court's finding that petitioner overcame the presumption was proper. Finally, we consider whether petitioner showed by the preponderance of the evidence that the estate was entitled to the accounts. As respondent presented essentially no evidence, we conclude that he did.

As the parties agree, when a sole owner of a bank account adds an apparent joint tenant to the account, the law presumes that the original owner intends a gift. The basic form of interest in a joint account is a statutorily created form of joint tenancy. See 765 ILCS 1005 2 a West 2002 Murgic, 31 Ill. 2d at 588-90. The relevant statute provides that w hen a deposit in any bank or trust company is made in the names of 2 or more persons payable to them when the account is opened or thereafter, the deposit or any part thereof may be paid to any one of those persons. 765 ILCS 1005 2 a West 2002 . The presumption of a gift arises because an instrument creating a joint account under the statutes presumably speaks the whole truth. Murgic, 31 Ill. 2d at 591. A party challenging the presumption can overcome it only by clear and convincing evidence. Murgic, 31 Ill. 2d at 591. The supreme court has adopted a bursting bubble theory of civil presumptions. Franciscan Sisters Health Care Corp. v. Dean, 95 Ill. 2d 452, 462 1983 concerning presumptions of undue influence in the making of a will . Therefore, once the party challenging the ownership of the bank account has presented sufficient evidence to overcome the presumption of a gift, the presumption vanishes. In re Estate of Lewis, 193 Ill. App. 3d 316, 319 (1990). However, the burden of proof remains on the party challenging the ownership. Murgic, 31 Ill. 2d at 591.

Illinois authority treats evidence establishing that a joint account was used as a convenience account as overcoming the presumption of a gift. e.g., Vitacco v. Eckberg, 271 Ill. App. 3d 408, 412 1995 suggesting that only a showing that a joint account was used as a convenience account will overcome

the presumption of a gift. *In re Estate of Blom*, 234 Ill. App. 3d 517, 519-20 (1992) (holding that the party challenging the transfer must show that the account was created only as a convenience). A convenience account is an account that is nominally a joint account, but is intended to allow the nominal joint tenant to make transactions only as specified by, and on behalf of, the account's creator. *E.g.*, *In re Estate of Goldstein*, 293 Ill. App. 3d 700, 706 (1997). The typical purpose of such an account is to allow the nominal joint tenant to pay the true owner's bills while the true owner is unable to do so. These cases reasonably assume that a person does not intend to give away the funds in the very account he or she relies on to pay bills.

Respondent suggests that the use of a joint account as a convenience account leaves open the possibility that the creator of the account intended the nominal joint tenant to have the funds at his or her death. We understand her position to be that, to overcome the presumption of a gift, the party challenging the presumption must show that the creator did not intend this. We deem this to be a misreading of *Murgic*. The plain sense of the court's phrase in *Murgic*, that "an instrument creating a joint account under the statutes presumably speaks the whole truth," is that the presumed gift was a *present* one, having as major conditions only those in the joint account agreement. Any kind of side agreement that significantly changes the ownership from the statutory joint tenancy is contrary to the presumption, because then the instrument would not be speaking the whole truth.[1] If

_____

[1]For the purposes of this case, we need be concerned only with a side agreement that significantly alters ownership. Whether a side agreement regarding an account's use, e.g., that a new joint tenant is to use the funds only for educational expenses, would defeat the presumption is not a

*petitioner can show that decedent intended to retain the entire right to use the funds in the accounts during his life,*

*even if he intended them to go to respondent at his death, that is enough to rebut the presumption.*

---

question we now face.

To expand on this, if the gift of an account is to take effect only on the creator's death, its ownership is different from that for which a joint account agreement provides--the function of a joint account agreement is to *immediately* share ownership. If the owner of an account intends to make a present transfer of a *future* interest in the account, *e.g.*, the remainder of the account upon the owner's death, that is also something for which an ordinary joint account agreement does not provide.[2]

We note that *Johnson v. La Grange State Bank*, 73 Ill. 2d 342 1978 , appears to hold that the presumption of a valid gift created by a joint account agreement survives despite proof that the gift involved conditions not listed in the agreement. Although the decedent in *Johnson* required the defendant in that case to use two nominally joint bank accounts for the decedent's benefit while she was alive, the court held that the account agreements "by their very terms indicated the existence of a valid *inter vivos* gift." *Johnson*, 73 Ill. 2d at 368. However, while Illinois courts have frequently followed *Murgic*, citing at least 29 times the language that the presumption is that an account agreement speaks the whole truth, no case has followed the

---

[2]We note that we do not find in Illinois law any clear recognition of future interests in ordinary tangible or intangible personal property. Assuming that a future interest can even exist in property other than a trust or real property, such an interest is an oddity.

relevant holding in Johnson. Further, respondent has waived any argument based on Johnson by failing to cite it. See 188 Ill. 2d R. 341(e)(7).

Altieri v. Estate of Snyder, 262 Ill. App. 3d 427 (1992), a case cited by respondent, does not undermine our interpretation of Murgic. In Altieri, the surviving joint tenant testified that the decedent referred to the accounts at issue as belonging to the decedent and the surviving joint tenant. Altieri, 262 Ill. App. 3d at 432. The joint tenant also said she believed that the decedent wanted her to have the money when the decedent died. Altieri, 262 Ill. App. 3d at 432. The trial court held that the accounts were true joint tenancies, and the reviewing court, citing Murgic, upheld the decision. Altieri, 262 Ill. App. 3d at 434. We deem the joint tenant's evidence about what the decedent wanted to happen to the money when she died to be beside the point, and the critical evidence to be that the decedent spoke of the money as belonging to both of them.

Neither Johnson nor Altieri alters our reading of Murgic. We hold that the relevant presumption is that the joint account agreement alone governs the ownership of a joint account, i.e., speaks the whole truth. Thus, clear and convincing evidence that the joint tenants had any understanding other than that in the joint account agreement can defeat the presumption that the joint account agreement speaks the whole truth.

With this background, we hold that petitioner had the burden to prove by clear and convincing evidence that an agreement beyond or different from the basic joint account agreement governed the ownership of the accounts. On meeting that first burden, he has the second burden of showing by the preponderance of the evidence that the estate is entitled to the accounts. We point out that any evidence that decedent intended respondent to own the accounts, but only at decedent's death, helps petitioner meet the first burden, but may weigh against him in meeting the second burden. Such evidence would tend to show that the two had not agreed to a simple joint tenancy, but might weigh for respondent's ultimate entitlement to the accounts.

We can now examine the trial court's findings of fact within the framework we have derived from _Murgic_. We review the trial court's findings of fact to ensure that they are not against the manifest weight of the evidence. _Village of Lake Villa v. Stokovich_, 211 Ill. 2d 106, 131 (2004). When a party must prove a point by clear and convincing evidence, this court should reverse only if it is manifestly evident that the evidence presented on the point was not clear and convincing. See Nelson v. County of De Kalb, 363 Ill. App. 3d 206, 208 (2005).

We first consider whether petitioner met his burden to show the existence of a side agreement regarding the accounts so as to overcome the presumption of a gift. We deem the evidence sufficient for us to conclude that the court's finding that petitioner overcame the presumption was not against the manifest weight of the evidence.

The intent of the owner of the funds at the time he or she created the account or made it joint determines whether the account is a convenience account or a true joint tenancy account. _Vitacco_, 271 Ill. App. 3d at 412. A decedent's statements of his or her intentions regarding an account are, naturally, relevant to deciding what his or her intentions were. See In re Estate of Divine, 263 Ill. App. 3d 799, 811 (1994). Marsik and John Doyle both testified that decedent discussed his intention to add a person to an account or accounts to help pay his bills. On this point, even if one disregards Marsik's testimony as biased, John Doyle's testimony remains. Within the same year as the discussions, decedent added respondent's name to the two accounts, leading to a fair inference that he was carrying through on his announced intention.

Reviewing courts have also used the putative donee's belief regarding the ownership of the account as some indication of the donor's intent. See In re Estate of Guzak, 69 Ill. App. 3d 552, 555 (1979). Respondent concedes that she believed that decedent wanted her to have the money at his death, not while he was alive. However, if one accepts her testimony that her belief was based on

her understanding of the law of joint accounts, her belief may be a poor indicator of decedent's intent.

Although the intent of the funds' owner at the time he or she added a name to an account determines who owns it, evidence of later events is pertinent to the extent that it bears on the relevant intent. Blom, 234 Ill. App. 3d at 519. In other words, courts will consider how accounts were actually used to decide how the original owners intended them to be used. Thus, that respondent used the accounts only to write checks for decedent's expenses, and only at the very end of decedent's life, is evidence that the accounts were convenience accounts.

Petitioner's evidence draws a believable picture of a person preparing for his possible disability by enabling his neighbor to pay his bills for him. In summary, his wife died, he mentioned to a friend and to his lawyer that he wanted to set up convenience accounts, and then he added his longtime neighbor's name to two accounts. Further, the neighbor then treated those accounts as one would expect if they were convenience accounts.

Although the evidence is stronger regarding the checking account than the savings account, the evidence that the savings account was a convenience account is nevertheless sufficient. Petitioner had direct evidence that respondent used the checking account exactly as one would expect with a convenience account. The evidence pertinent to the savings account is indirect, but satisfactory. First, decedent added respondent's name to both accounts at the same time, suggesting a common purpose for the two transactions. Second, the balance in the checking account was too low to cover an ordinary person's expenses more than briefly. Although the evidence does not exclude the possibility that decedent intended to have the checking account replenished directly from whatever income he had, it is a reasonable inference that decedent intended respondent to replenish the checking account from the savings account. Moreover, John Doyle and Marsik both

referred to decedent discussing putting a second name on "accounts." We therefore conclude that the court properly found that petitioner overcame the presumption of a gift by clear and convincing evidence.

Respondent points to what she contends are several fatal flaws in the evidence that the court considered. We review each, concluding that none is a basis for reversing the judgment.

Respondent asserts it is unreasonable to say that the evidence clearly showed that decedent intended to create convenience accounts when he easily could have made his intentions regarding the accounts clear through a new will or other written directive. We agree that decedent easily could have documented his intent in writing at the time he added respondent's name to the accounts. We further agree that this would have been the prudent choice, as it would have, with little effort, eliminated any controversy about the ownership of the accounts. However, the failure to take such a precaution is something this case has in common with essentially every case in which the parties litigate the ownership of a joint account. Further, decedent's documentation of his intent would be equally important whether he intended to make a gift to respondent or to create convenience accounts. The legal presumption of a gift would make it important to document his intent to create convenience accounts. The likelihood that his heirs or legatees would assume that he intended to create convenience accounts would make it important to document his intent to make a gift. Therefore, his apparent failure to create such documentation tells us nothing about his intent.

Respondent also asserts that Marsik was not a credible witness because he was motivated to lie to make up for his failure to advise decedent on how to make his intentions clear. Although Marsik's involvement in decedent's estate planning is a possible source of bias, his credibility was for the trial court to decide. See In re Marriage of Smith, 347 Ill. App. 3d 395, 400 (2004). Further,

Marsik's testimony was similar to John Doyle's, which both bolstered it and made it less critical to the court's decision.

Respondent next asserts that the court erred in considering that decedent approached Mildred Doyle as well as respondent to be named on the accounts as evidence that decedent did not intend to make a gift. We disagree as a matter of common sense. A person who needs someone to serve as a convenience signatory might naturally approach any of several persons he or she trusted to take on the job. By contrast, a person who intends to make a gift will normally have a particular recipient in mind. To the extent that the evidence shows that decedent treated respondent as a substitute for Mildred Doyle (other explanations for what happened are conceivable), it strongly suggests that he envisioned both as convenience signatories.

Finally, respondent contends that the court erred in considering as favoring petitioner her failure, as a donee, to file a gift tax return. We doubt that the use of such a factor is generally proper, as we are familiar only with the duty of a <u>donor</u> to file such a return. *See, e.g., Introduction to Estate and Gift Taxes, Internal Revenue Service Publication 950 September 2004 United States Gift and Generation-Skipping Transfer Tax Return Instructions 2005*. However, any misunderstanding by the court here had no significance. How a putative donee treats an account for tax purposes could bear only on his or her <u>belief</u> about the putative donor s intent. By her positive concession that she believed that decedent intended a gift to her only on his death, respondent has removed from contention any claim that she believed that he intended to make a present gift to her. Since the nonfiling of a gift tax return could have served only to help establish a matter that is not in contention, any error about the meaning of the nonfiling was not significant.

Having established that the court did not err in finding that petitioner overcame <u>Murgic</u>'s presumption of a gift, we next must decide whether petitioner met his burden to show the estate's

entitlement to the accounts by the preponderance of the evidence. The court did not explicitly rule on this second burden, but it is unmistakable that petitioner met it. Petitioner presented the previously mentioned evidence that tended to show that decedent intended the accounts as convenience accounts. Further, the evidence that he treated respondent and Mildred Doyle as equally proper persons to put on the accounts tended to show, for the reasons we have discussed, that he did not intend to make a gift to either of them. Finally, respondent had no evidence that the accounts should be hers other than her belief that decedent intended her to have them at his death-- evidence that was weakened as an indication of decedent's intent by respondent's statements that her belief was based on her understanding of the law of joint accounts. The preponderance of the evidence was overwhelmingly in favor of petitioner.

For the reasons given, we affirm the order of the circuit court of Du Page County awarding the estate the bank accounts.

Affirmed.

BYRNE and KAPALA, JJ., concur.