*In re* ESTATE OF ALICE G. FLECKEN, Deceased (Pamela Koldras, Petitioner-Appellee, v. Melodie Waters *et al.*, as Co-executors of the Estate of Alice G. Flecken, Respondents-Appellants).

First District (6th Division)   No. 1—93—1465

Opinion filed September 30, 1994.

Bruce Rose, of Dvorak & Edmonds, Ltd., of Westchester, for appellants.

Terrence J. Benshoof, of Woodridge, for appellee.

PRESIDING JUSTICE EGAN delivered the opinion of the court:

The petitioner, Pamela Koldras, filed a petition to recover certain stock certificates held by the respondents, Melodie Waters and Tamara Peterson. Pamela is the daughter of Alice Flecken (decedent), and the respondents, Melodie Waters and Tamara Peterson, are the co-executors of the estate of Alice Flecken. Waters and Peterson are the daughters of Colin Flecken, a son of Alice Flecken. The petitioner

was registered on the stock certificates as a joint tenant with Alice Flecken. After an evidentiary hearing, the trial judge ruled that the stocks were owned by the petitioner. He noted that, by virtue of the registration of the stock in joint tenancy, it was presumed that the decedent had the requisite donative intent at the time of the transfer; he ruled that the respondents failed to establish by clear and convincing evidence that the decedent lacked donative intent at the time the stocks were registered in joint tenancy.

Neither party has articulated the standard on review. We judge that the respondents must establish that the judge's findings were against the manifest weight of the evidence.

Before 1966 the decedent and her husband purchased stock in Tenneco, Inc., and Allied Signal, Inc. When her husband died in 1966, the decedent registered the stocks in joint tenancy with her daughter, the petitioner, and the decedent's son, Colin Flecken. Colin held those certificates because he owned a safe. In 1986, the decedent and Colin had a "falling out." The decedent filed a chancery action to remove Colin as a joint tenant on the stocks. In May 1987, Colin turned the endorsed stock certificates over to the decedent's attorney in settlement of the action.

In 1986, the decedent became ill with leukemia. She added the petitioner as a joint tenant on several of her bank accounts and opened a safety deposit box with the petitioner as a joint tenant. The petitioner put the stocks she received from Colin into the safety deposit box. Between 1987 and 1989, the decedent acquired other stocks, either purchased or through stock splits, in MAF Bancorp, Inc., Wheelabrator Technologies, Inc., MFS Charter Income Trust and St. Paul Bancorp, Inc.; the stocks were registered in the names of the petitioner and the decedent as joint tenants.

During 1990, the petitioner and the decedent also had a "falling out." The decedent removed the petitioner's name from her bank accounts and from access to the safety deposit box. She added Colin and the respondents as lessees of the safety deposit box. The petitioner refused to endorse the stock certificates so that her name would be removed as a joint tenant. In September 1990, the decedent filed an action in chancery, seeking to order the petitioner to endorse the shares or an order imposing a constructive trust on her "one-half" interest.

The decedent moved for summary judgment in the chancery action; she stated in her affidavit, "It was not my intention, in adding my children as joint owners, to confer upon them any present ownership but rather, to insure that said stock would pass to them upon my death." She also stated, "It is specifically not my desire that

the stock pass to [petitioner] in its entirety in the event of my death"; the affidavit was dated November 1, 1991. The petitioner responded to the decedent's motion for summary judgment; in her affidavit, the petitioner stated that the "stocks, if not exhausted for the benefit of [the decedent's medical bills], would be compensation for services." The decedent died on March 20, 1992, and the chancery proceeding against the petitioner was not resolved. On the date of death, all stock certificates remained in the safety deposit box to which the petitioner could not gain access; only Colin and the respondents had access to the box.

On August 31, 1992, the petitioner filed a "Petition for Citation" to recover the stock certificates. The respondents answered that the decedent added the petitioner on the stocks as a matter of "convenience," for quick liquidation; that she had no intention of conveying "present ownership interest" to the petitioner; that the petitioner took the position in 1991 that the stocks were transferred as "compensation" not as a gift; that the decedent purchased all of the stock with her own funds; and that the decedent "revoked" the petitioner's interest in the stocks by filing the chancery action.

Attached to the respondents' answer was a copy of the decedent's will. According to the will, Colin was to receive "any and all stock or negotiable instruments not otherwise described herein, per stirpes and not per capita." The respondents were to receive $10,000 each from two CD's. The will also stated, "I specifically and intentionally make no provisions herein for the benefit of my daughter, Pamela Koldras, or any members of her family."

Before the evidentiary hearing on the petition began, the trial judge noted that there was no dispute regarding title because the petitioner was the registered surviving joint tenant on the certificates and, therefore, the case should be treated as a recovery petition by the estate under section 16—1 of the Probate Act of 1975. (Ill. Rev. Stat. 1991, ch. 110$^1$/$_2$, par. 16—1.) The trial judge told the parties: "[S]ince there is no dispute that this was stock in joint tenancy in compliance with the Statute, and she is the surviving tenant, she has the title[.] *** [T]he obligation, now, is encumbent [sic] upon the estate to show, for one reason or another, that this is not a true joint tenancy." The respondents' attorney agreed with the trial judge and proceeded to introduce evidence.

The respondents first called the petitioner. She testified that she never removed the stock certificates and only went to place more stocks in the safety deposit box when her mother was "indisposed." Her mother never said that she added the petitioner as a joint tenant on the stocks so that she could quickly liquidate them if her mother

became incapacitated. She understood that the stocks were to be used to pay for medical expenses and that, if they were not liquidated, then she would receive them. She signed the dividend checks until 1990; she never received any dividend proceeds from the stocks. She agreed that she took the position in 1991 that some stocks were "compensation" for caring for her mother; she added that some stocks predated 1986. Her mother never objected to the registration of the stocks in joint tenancy and never asked her to endorse them until 1990.

Melodie Waters, one of the respondents, testified that the decedent told her why the stocks were put in joint tenancy: "[I]f she [the decedent] needed money, [the petitioner's] name was on there, she could give the stock certificates to Ed [petitioner's husband, a stock broker], and they could be cashed in." Petitioner's counsel objected on the ground that the statement violated the Dead-Man's Act, but the trial judge overruled the objection; he stated that it was admissible because the action proceeded under section 16—1 of the Probate Act. She also testified that the decedent wanted the petitioner to endorse the stocks so that when she died "she [could] disburse them as she wished."

Colin Flecken explained why the decedent added him as a joint tenant on certain stocks: "[I]n the event she was overseas or she got very sick that *** I, myself, or Pamela, could sell the stock in her name." He thought that neither he nor Pamela had any "ownership interest" in the stocks.

The trial judge ruled in favor of the petitioner. He initially noted that a presumption is established when one registers stock in joint tenancy in compliance with the statute and that the presumption is rebutted only by clear and convincing evidence that donative intent was lacking at the time of registration. He looked to the decedent's affidavit from the chancery proceeding; her affidavit indicated that her intent was to ensure that the stock would pass to the joint tenants upon her death. He noted that the decedent intended to leave nothing to the petitioner in 1991. He emphasized that evidence of the lack of donative intent must relate back to the date of registration; he stated:

> "Her own affidavit *** indicated that it was her intention that these stock certificates pass to petitioner [Pamela Koldras] upon her death. And if that was her intention at the time that she created the joint tenancy, the fact that she subsequently may change her mind cannot in any way affect her intention at the time the account is created."

He also noted that, although the decedent may have attempted to remove the petitioner from the stock certificates, that proceeding

terminated when the decedent died and that he could not speculate what the outcome of that proceeding may have been. Regarding the respondents' argument about possession negating donative intent, he replied that such an argument was "of no consequence, because only one person can have physical possession of the stock certificates" at a time.

■ A stock certificate, registered in the name of joint tenants with the appropriate statutory language, presumptively establishes the donative intent necessary for a valid gift to the joint tenant; that presumption may be rebutted only by clear and convincing evidence. (*Frey v. Wubbena* (1962), 26 Ill. 2d 62, 185 N.E.2d 850.) To rebut the presumption, clear and convincing evidence of the lack of donative intent must focus upon or relate to the time of the creation of the joint tenancy.

The respondents contend that the decedent, at the time she registered the stocks in joint tenancy, lacked the requisite donative intent to establish the presumption. They claim that the stocks were registered in joint tenancy for the sake of convenience, that is, so that one of the joint tenants easily could liquidate them if the decedent needed the money. The petitioner responds that this evidence of "convenience" was contradicted by the decedent's own affidavit. She also emphasizes that such "evidence" is ludicrous because the stocks could not be surrendered without the decedent's signature as required by the statute; accordingly, such an alleged intent was wholly inconvenient when compared to a joint bank account.

■ Initially, we note that the respondents appear to combine the requisites for an effective gift, donative intent and delivery, and the requisites for the creation of a joint tenancy. There is no question here about the creation of the joint tenancy because the stocks were properly registered according to the statute. (Ill. Rev. Stat. 1991, ch. 76, par. 2.) The fact of a proper joint tenancy creates the presumption that the donor possessed the requisite donative intent at the time the stocks were registered for a valid gift. Thus, the issue here is whether the respondents presented sufficient evidence on the lack of the decedent's donative intent to rebut the presumption.

■ The respondents' first attempt to rebut the presumption is by casting the joint tenancy as a device of "convenience." They argue that the decedent created the joint tenancy for the sole purpose of quick liquidation; in the event the decedent was ill or overseas, the joint tenant could liquidate the stocks and transfer the money to pay for any hospital bills. Evidence that the transfer was made for the mere convenience of the donor is an indication of lack of a donative intent. (*In re Estate of Elliott* (1975), 33 Ill. App. 3d 1046, 339 N.E.2d

378.) The petitioner, however, points out that the only evidence of this alleged intent comes from one of the respondents and Colin, who would receive the stocks if the estate succeeded. The trial judge noted that there was stronger evidence of the decedent's intent. He found that this alleged "convenience" was contradicted by the direct evidence of the decedent's actual intent at the time the joint tenancy was created. The decedent stated, in a sworn affidavit dated November 1, 1990, "It was not my intention, in adding my children as joint owners, to confer upon them any present ownership but rather, to insure that said stock *would pass to them upon my death*." (Emphasis added.)

The petitioner also challenges the respondents' convenience argument because, unlike a bank account, stocks may be liquidated only with the signature of both joint tenants. The petitioner notes the inconvenience of surrendering stocks held in joint tenancy and cites *Hayes v. Lewis* (1975), 33 Ill. App. 3d 186, 338 N.E.2d 102. In that case, the decedent presented stocks that apparently were forged with the plaintiff's signature. In upholding the surviving joint tenant's right to the stocks, the court noted that the only method by which the decedent could have obtained the entire ownership of all the stock was by obtaining the genuine endorsements of herself and plaintiff or upon a separate stock power. Thus, stocks registered in joint tenancy are substantially less "convenient" than joint bank accounts, which permit access to either joint tenant individually.

Next, the respondents contend that it was the petitioner's and Colin's understanding that neither "had any ownership interest in the stock." The respondents claim that this understanding is evidenced by Colin's "immediate" return of the stock to decedent upon demand and petitioner's failure to claim any ownership interest in her answer to the 1990 chancery action. The respondents assert that the petitioner's belief that she lacked a present ownership interest is indicative of the decedent's lack of donative intent. The respondents' counsel, however, never asked the petitioner whether she had a present ownership interest in the stocks. At most, it may be said that she believed she would receive whatever proceeds remained after all of her mother's bills were paid. Moreover, we fail to see how Colin's beliefs must be imputed to the petitioner.

The appellate court recently considered the essence of a joint tenancy bank account in *In re Estate of Harms* (1992), 236 Ill. App. 3d 630, 634-35, 603 N.E.2d 37:

> "A joint account is often used as a form of testamentary disposition, a will substitute, where the *creator* does not intend the other tenant to have any present interest, but does intend the other

tenant to have the account on the creator's death. Such an account is a true joint tenancy account with the right of survivorship, whether or not the other tenant claimed any interest in the account during the creator's life."

The supreme court, in *Frey v. Wubbena* (1962), 26 Ill. 2d 62, 72, 185 N.E.2d 850, quoting *In re Estate of Mueth* (1962), 33 Ill. App. 2d 449, 451, 179 N.E.2d 695, noted that a donor's intent to create a survivorship arrangement " 'is the essence of joint tenancy.' " Thus, the petitioner need not claim any interest in the stock during the decedent's lifetime in order to claim an interest as a surviving joint tenant.

The respondents also contend that decedent's exercise of exclusive authority and control over the stocks indicates a lack of donative intent. They emphasize that, although the stocks were kept in a safety deposit box held in joint tenancy, the petitioner only went to the box twice outside the decedent's presence; they add that on these two occasions the petitioner put stocks into the box only at the decedent's direction. The petitioner correctly notes that our supreme court has stated, "Each of the co-owners has an equal right to possession of the evidence of title (passbook, note, certificate, etc.) and, since they cannot both have manual possession at the same time, possession by one is possession for the benefit of both." (*Frey*, 26 Ill. 2d at 72.) The trial judge's remarks reflect his recognition of the reasoning of the supreme court in *Frey*. It is significant that the petitioner had equal access to the box from 1986 to 1990; she could have exercised control over the stock certificates during this time period.

Last, the respondents claim that the decedent's filing of the 1990 chancery action effectively severed the joint tenancy. They contend that events occurring after the creation of the joint tenancy may be considered in determining whether the donor actually intended to transfer his interest upon death. They rely on the case of *Franklin v. Anna National Bank* (1986), 140 Ill. App. 3d 533, 488 N.E.2d 1117, which is factually distinguishable. In that case, the court found persuasive the fact that decedent changed the named joint tenant on his bank account nine months after he designated her. In the case before us, however, the decedent attempted to sever the joint tenancy more than 34 years after the earliest registration and one to three years after the later registrations. The trial judge found the decedent's attempt to sever inconclusive; he stated that he would not speculate on whether the chancery action would have succeeded in severing the joint tenancy.

Other courts have stated consistently that a mere change of mind

subsequent to the creation of the joint tenancy is an insufficient indicator of a lack of donative intent. In *In re Estate of Stang* (1966), 71 Ill. App. 2d 314, 218 N.E.2d 854, the decedent registered stocks in his and his brother's name. After his death, a holographic will was discovered that purportedly distributed the stocks to others. The court noted that the reference to the stocks in the will did not indicate whether the decedent lacked donative intent at the time of the creation of the joint tenancy nor did it indicate whether he possessed the donative intent at that time and merely changed his mind without performing any act to sever the joint tenancy relationship.

In *Hayes v. Lewis*, previously cited, a daughter sought to restrain her mother from transferring stocks held in joint tenancy. The certificates bore forged signatures of the daughter. The mother died before the action was resolved. The appellate court held that the evidence was insufficient to rebut donative intent and dismissed the executor's reliance on the mother's subsequent unresolved acts to sever the joint tenancy: "The fact that [the mother], at some time after all of the stock had been placed in joint tenancy, changed her mind and decided as a matter of preference that she did not wish her interest in the stock to pass to [the daughter] as the surviving joint tenant, was not, in itself, operative to sever the joint tenancy." (*Hayes*, 33 Ill. App. 3d at 190; see also *In re Estate of Marx* (1973), 11 Ill. App. 3d 727, 297 N.E.2d 637.) Thus, in the case before us, the decedent's unsuccessful attempt in her chancery action to sever the joint tenancy is insufficient, in itself, to rebut the presumption.

We need not address the petitioner's argument that the testimony of Colin Flecken and Melodie Waters concerning the conversation with the decedent should have been barred by the Dead-Man's Act. Ill. Rev. Stat. 1991, ch. 110, par. 8—201.

For these reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

McNAMARA and RAKOWSKI, JJ., concur.