# Illinois Official Reports

## Appellate Court

---

### *Konfrst v. Stehlik*, 2014 IL App (1st) 132113

---

| | |
|---|---|
| Appellate Court Caption | FRANK H. KONFRST, Independent Executor of the Estate of Beverly J. Czerwinski, Deceased, Plaintiff-Appellant, v. CYNTHIA STEHLIK, Defendant-Appellee. |
| District & No. | First District, Fifth Division<br>Docket No. 1-13-2113 |
| Filed | June 20, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Based on the evidence presented concerning decedent's conduct with regard to the creation and management of a checking account and a money market account set up in joint tenancy with defendant, decedent's niece, the trial court found that the checking account was created for "convenience" to allow the niece to assist decedent in paying her bills and that the balance in the account at the time of decedent's death belonged to decedent's estate, but the balance in the money market account at the time of decedent's death passed to defendant as the surviving joint tenant, and on appeal, the trial court's finding as to the money market account was affirmed. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-P-1044; the Hon. John J. Fleming, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

John R. Krafcisin, of Chicago, for appellant.

Zapolis & Associates, P.C. (Robert J. Zapolis, of counsel), for appellee.


Panel

JUSTICE PALMER delivered the judgment of the court, with opinion.
Presiding Justice Gordon and Justice McBride concurred in the judgment and opinion.

**OPINION**

¶ 1    This case involves a citation proceeding brought by plaintiff Frank Konfrst, independent executor of the estate of Beverly J. Czerwinski (the decedent), against defendant Cynthia Stehlik, the decedent's niece, to recover the proceeds from a checking account and a money market account. Defendant withdrew the funds from both accounts after the decedent's death and plaintiff brought this action to recover those funds on the ground that they belonged to the decedent's estate. Defendant responded that the funds belonged to her because the decedent and defendant held the accounts in joint tenancy with the right of survivorship. Plaintiff, on the other hand, claimed that the accounts failed to comply with the requirements of the Illinois Joint Tenancy Act (the Act) (765 ILCS 1005/2 (West 2010)) and that the decedent did not intend to make a gift of a joint tenancy interest in either account but, instead, placed the defendant's name on the accounts for convenience only so that defendant could assist the decedent in paying her expenses. A bench trial was held on the issues.

¶ 2    The following facts are not in dispute. On July 27, 2002, the decedent's husband passed away. The decedent passed away on February 7, 2010. The decedent was survived by one brother, Frank Konfrst, her brother's daughter, Ti Brook Barnes, and one sister in California. The decedent was married only once and had no children. Defendant is the niece of the decedent's late husband and had been living next door to the decedent at all relevant times. From at least 2003 through the date of her death, decedent had a checking account and a money market account at Charter One Bank. It is undisputed that decedent was of sound mind and good health when she created these accounts sometime in 2003. From at least 2003 through the date of her death, all of the decedent's daily living expenses were paid through the accounts. From 2003 through the date of the decedent's death, the balance of the accounts was never less than $80,000. From the time defendant's name was added to the accounts to the time of the decedent's death, defendant never contributed money to either account. From the time the decedent's name was placed on the accounts to the time the decedent was terminally ill in a hospital or hospice, defendant never used the money in the accounts for herself and only made transactions on the accounts as specified by, and on behalf of, decedent. During this same period, all mail regarding the accounts was sent to the decedent's home. Near the end of the

- 2 -

decedent's life, defendant changed the address for the bank statements from the decedent's residence, at one side of a duplex, to her own residence on the other side of the duplex so that confidential information would not be seen by others while the decedent was receiving in-home care. From the time defendant's name was placed on the accounts to the time of the decedent's death, defendant never claimed as income any of the interest from the accounts on her federal or state taxes but, instead, all such interest income was claimed on the decedent's federal and state taxes. From 2003 to the date of the decedent's death, defendant was a tenant of the decedent and had been paying rent. On April 8, 2009, decedent was fully mentally competent and aware that the accounts at Charter One Bank contained funds in excess of $225,000. On the day after the decedent's death, defendant withdrew $255,235.57, the then balance of the money market account. Approximately one week later, defendant withdrew $8,836.36, the then balance on the checking account.

¶ 3        At trial, Barnes testified that within two months of the death of the decedent's husband, the decedent asked Barnes if she would be willing to be named on a Charter One Bank account with the decedent to pay bills "in an emergency." Barnes declined for reasons such as the absence of Charter One Bank branches in Arizona where she lived.

¶ 4        Defendant testified at trial that she lived next door to the decedent, in one-half of the decedent's duplex in Illinois, throughout her life. Defendant and her mother drove the decedent shopping, to doctor's appointments, and anywhere she needed to go, as the decedent did not drive. In late 2002, at the request of the decedent, defendant drove the decedent to Charter One Bank near their homes in Cicero, Illinois. Decedent opened a joint checking account and a joint money market account with defendant. Defendant testified that she and the decedent signed the necessary papers to open a joint money market account and a joint checking account. Defendant testified that she made approximately 10 or 15 transactions on the checking account to pay the decedent's expenses. When defendant was shown an example signature card form at trial which contained the joint tenancy with right of survivorship language on it for the money market account, she testified that she signed something similar as part of the account paperwork. Defendant's counsel also submitted into evidence a deposit account application form with both parties' signatures, both parties' contact information, and the money market account number, but the form was not dated.

¶ 5        Under cross-examination, defendant testified that the decedent also opened a third account between herself and Frank Konfrst the same day the checking and money market accounts were created. Defendant testified that while she and the decedent were at the bank that day, the decedent told her that this third account was "theirs," referring to the decedent's brother and sister. The decedent also told defendant that the joint money market account and checking account were defendant's when the decedent "croaked." Defendant testified that she felt the account was owned jointly, but that the money was her aunt's so long as her aunt was alive.

¶ 6        Henry Moheka, a representative from Charter One Bank, was called to testify by defendant. Moheka testified that a signature card would need to be signed by both parties in order to open a joint money market account, as was opened here. He could not speak to the signing of this form for this particular account opened in 2003, as he joined the bank some years after the money market account was created. Running a search through the Charter One Bank records, he could not find records or signature cards for any accounts opened by the decedent. Under questioning by the trial court, Moheka testified that he conducted a search that would have directed him to the signature cards for any accounts that were currently closed and

that he could not locate any records. Moheka agreed with the trial court's statement that "somewhere there should have been some records" "at some time" but that Moheka could not locate those records. It is undisputed that Charter One Bank does not maintain records older than six years old in its files and that therefore any original signature cards signed by parties creating joint tenancies more than six years ago have been destroyed.

¶ 7 Plaintiff introduced into evidence a handwritten note from the decedent that stated "I leave $50,000 to my niece Cynthia Stehlik 3833 South 58th Court Cicero, IL 60805" that was allegedly signed by the decedent and dated April 8, 2009. Defendant authenticated the note as being signed by and in the decedent's handwriting.

¶ 8 The trial court held that defendant had proved by clear and convincing evidence that both the money market account and the checking account complied with the Joint Tenancy Act. Regarding whether the accounts were created for "convenience" and thus not true joint tenancies with right of survivorship, the trial court held that plaintiff failed to prove a lack of donative intent on the decedent's part in regard to the money market account. Thus, the money market account was held to be a true joint tenancy with right of survivorship and defendant was entitled to the funds from that account. The court also held that plaintiff had proved the decedent intended the checking account to be a convenience account and that the funds from that account belonged to the estate. Plaintiff now appeals.

¶ 9 The only issue on appeal is the trial court's ruling regarding the money market account. The court's ruling regarding the checking account is not in dispute.

¶ 10 Plaintiff contends that the trial court's ruling as to the money market account is against the manifest weight of the evidence. Plaintiff first argues that defendant failed to prove that the money market account complied with the Act. Second, plaintiff argues that even if the account complied with the Act, the account was actually a "convenience account" such that defendant is not entitled to the funds. Defendant counters that the trial court's ruling should be upheld because the money market account complied with the Act and because plaintiff failed to overcome the presumption of donative intent on the part of the decedent.

¶ 11 A trial court's finding that certain property belongs to a particular party will not be disturbed on appeal unless it is against the manifest weight of the evidence. *In re Estate of Weisberg*, 62 Ill. App. 3d 578, 588 (1978). A decision is against the manifest weight of the evidence when the opposite conclusion is clearly apparent or when findings appear to be unreasonable, arbitrary, or not based on the evidence. *In re Vanessa K.*, 2011 IL App (3d) 100545, ¶ 28. A finding may also be considered as against the manifest weight of the evidence if the outcome is palpably erroneous and wholly unwarranted or clearly the result of passion or prejudice. *In re Guardianship of K.R.J.*, 405 Ill. App. 3d 527, 536 (2010). The manifest weight of the evidence standard recognizes that the trial court is in the best position to observe the conduct and demeanor of the parties and witnesses and has a degree of familiarity with the evidence that a reviewing court does not obtain. *People v. Richardson*, 234 Ill. 2d 233, 251 (2009).

¶ 12 One of the essential characteristics of a joint tenancy is the right of survivorship or the right of the last surviving joint tenant to take the whole. *Harms v. Sprague*, 105 Ill. 2d 215, 224 (1984); *In re Estate of Alpert*, 95 Ill. 2d 377, 381 (1983). Upon the death of a joint tenant, title passes by operation of law to the survivor. *Bonczkowski v. Kucharski*, 13 Ill. 2d 443 (1958); *In re Marriage of Dudek*, 201 Ill. App. 3d 995, 997 (1990). As such, the entire property goes to

the surviving tenant and cannot be inherited by another through a will or as part of the decedent's estate. *Id*.

¶ 13 Joint tenancies in personal property in Illinois are governed by section 2 of the Act. The Act in relevant part states that except as to executors and trustees, and except also where "by will or *other instrument in writing expressing an intention to create a joint tenancy in personal property with the right of survivorship*," the right for owners to leave personal property in joint tenancy with right of survivorship has been abolished. (Emphasis added.) 765 ILCS 1005/2 (West 2010). Thus, for parties outside executors or trustees, a written instrument must be created in order for a joint tenancy with right of survivorship to be created, or else the owners of joint property will be deemed tenant in common. *Id.*

¶ 14 This statute does not "impair or affect the rights, privileges and immunities" of joint tenants when:

> "[A] deposit in any *bank* or trust company transacting business *in this State* has been made or shall hereafter be made *in the names of 2 or more persons payable to them when the account is opened or thereafter*, the deposit or any part thereof or any interest or dividend thereon may be paid to any one of those persons whether the other or others be living or not, *and when an agreement permitting such payment is signed by all those persons at the time the account is opened or thereafter* the receipt or acquittance of the person so paid shall be valid and sufficient discharge from all parties to the bank for any payments so made." (Emphases added.) 765 ILCS 1005/2(a) (West 2010).

Therefore, Illinois bank accounts created in the name of two persons, when the funds are payable to either party whether the others be living or not, shall be valid joint tenancies with right of survivorship *if* an agreement permitting such payment is signed by the persons named on the account at the time the account is created or if such a document is signed by the persons named on the account thereafter to that effect. See 765 ILCS 1005/2(a) (West 2010). The joint tenants can destroy the joint tenancy at any time during their life by receipt or written release from obligation such that the bank shall be relieved of any duty to uphold the joint tenancy, but a written instrument such as a will created by a joint tenant after the joint tenancy is properly made bequeathing his or her share of the account to another does not destroy a joint tenancy validly created. 765 ILCS 1005/2(a) (West 2010).

¶ 15 Where parties dispute whether an account is properly held in joint tenancy, as in this case, the surviving joint tenant carries the initial burden of proving by clear and convincing evidence that the account was properly created in keeping with the Act. *In re Estate of Regelbrugge*, 225 Ill. App. 3d 593, 596 (1992) (citing *O'Vadka v. Rend Lake Bank*, 203 Ill. App. 3d 1007, 1015 (1990)). A survivor joint tenant must prove that: (1) an interest in personal property was created by means of a written instrument; (2) the instrument expresses the intent to create a joint tenancy by expressly providing that the property so held is subject to the rights of survivorship between the owners; and (3) the instrument complies with definiteness and description requirements of that of a will, describing the subject matter, parties, and certainty of its object. *Regelbrugge*, 225 Ill. App. 3d at 596; *David v. Ridgely-Farmers Safe Deposit Co.*, 342 Ill. App. 96, 109 (1950). Plaintiff in this case claims that defendant failed to meet her burden because she did not produce the written agreement at trial.

¶ 16 Our supreme court has interpreted the Act to require joint bank account holders to sign a written agreement permitting payment of the account to the survivor in order to create a joint tenancy with a right of survivorship in that account. *Doubler v. Doubler*, 412 Ill. 597, 600-01

- 5 -

(1952). In *Doubler*, a husband wanted to put his wife's name on the passbook associated with an account held solely in his name. The husband instructed the assistant cashier at the bank to write the name of the wife immediately after the husband's name, and the husband also wrote above both names " 'Payable to either of them or the survivor with full survivorship rights.' " *Id.* at 598-99. As the Act requires a written agreement between joint tenants be signed and expressly state the account is to be held in joint tenancy, the court held the changing of the names by a third party at the direction of one of those parties was insufficient to satisfy the requirements of the Act. *Id.* at 601.

¶ 17    However, the existence of the required written agreement can be proved by evidence other than a signature card, and a court may look to factors outside the written instrument when determining whether an account was held in joint tenancy. *Regelbrugge*, 225 Ill. App. 3d at 596; *In re Estate of Guzak*, 69 Ill. App. 3d 552, 555 (1979); *In re Estate of Denler*, 80 Ill. App. 3d 1080, 1087 (1980). The court held in *Regelbrugge* that while a signed agreement is required to create a joint tenancy in a bank account, it is appropriate for courts to consider: (1) the facts surrounding the creation of the account; (2) the circumstances and events occurring thereafter; (3) the facts surrounding the exercise of authority and control over the account; and (4) the survivor's understanding of the account. *Regelbrugge*, 225 Ill. App. 3d at 596-97.

¶ 18    In *Regelbrugge*, the respondent did not produce the original signature cards at trial adding her to the joint account respectively but testified that she signed a signature card with the decedent in 1984 and that she and the decedent kept a savings book for the account. *Id*. at 597. The court found that although "the sole testimony of a donee is of questionable credibility and should be carefully scrutinized," the respondent corroborated her testimony with other facts surrounding the account. *Id*. An assistant cashier from the bank produced a photocopy from the bank's microfilm records containing the signatures of the decedent and the respondent, accompanied by a statement that the respondent was made a joint tenant to the account on October 1, 1984. Her records also showed that respondent's daughter became a party to the account in 1988. *Id.* at 596. The respondent also claimed that she understood that she was able to withdraw funds from the account for her personal use, though she never did so, because both the respondent's and the decedent's names were on the account. The savings books admitted into evidence revealed the names of both the decedent and the respondent, and the respondent began to receive statements on the account in 1984. *Id*. The *Regelbrugge* court held that this evidence sufficiently corroborated the respondent's testimony and proved that a joint tenancy agreement had been signed even though the signed agreement was not produced. *Id*. at 597.

¶ 19    Plaintiff in the present case argues that the principle set forth in *Regelbrugge*, that the signed agreement can be proven by evidence other than the agreement itself, is *dicta* and therefore not binding. We disagree. As set forth above, the principle that the signed agreement can be proven by other evidence directly answered the issue in that case, which was the lack of a signed written agreement, and the court applied that principle to conclude that sufficient evidence had been presented to prove that a joint tenancy had been created. Plaintiff is also incorrect that applying the principle in *Regelbrugge* would nullify the rule set forth in *Doubler* that a signed written agreement is necessary to create a joint tenancy in a bank account. The principle in *Regelbrugge* is not that a signed agreement is unnecessary to create a joint tenancy in a bank account but, instead, simply that the existence of such a signed agreement can be proven with evidence other than the agreement itself.

¶ 20     As in *Regelbrugge*, defendant in this case testified that when she and the decedent opened the money market account at the bank, they both signed the signature cards for both the checking and the money market accounts. Plaintiff asserts that defendant's testimony that she and the decedent signed a signature card "similar" to the unsigned personal account agreement produced by Charter One Bank is far from clear and convincing evidence. However, the trial court did not rely solely upon defendant's testimony to conclude that a written agreement creating a joint tenancy with right of survivorship had been signed by defendant and the decedent. For example, the court considered Moheka's testimony that the personal account agreement shown to defendant at trial is the form used for opening new accounts at Charter One Bank and that this form contains right of survivorship language and defendant's testimony that the agreement she and the decedent signed was similar to this form. Though the records no longer existed when the bank representative did his search, defendant testified that she understood she was able to withdraw funds from the account for her personal use because both defendant's and the decedent's names were on the account. The bank statements for the money market account listed the names of both the decedent and defendant, and defendant was able to have the statements for the money market account sent to her address when the decedent began requiring in-home care. Defendant also introduced a deposit account application for the money market account that the decedent and defendant filled out as "co-applicants" with both of their signatures. Although the form is not dated and does not contain any language regarding the type of ownership in the account, it could be considered as corroborative of the decedent's intent to open a joint account. Moheka, the Charter One Bank representative, testified that the fact that both the names of the decedent and defendant were on the bank statements indicates that it was a joint account with right of survivorship and that it could not have been any other type of account.

¶ 21     The trial court also relied on defendant's testimony that the decedent opened a third account at the bank and told her that this account was "theirs" and that the checking and money market accounts were hers. The defendant understood this to mean that the money market and checking account were going to be left to her and that the third account was going to be left to the other joint account holders, the decedent's brother and sister. Finally, the court considered defendant's testimony that the decedent told her that the money market and checking accounts were defendant's when the decedent "croaked."

¶ 22     The trial court heard all of the above evidence and found that defendant had met her burden and established by clear and convincing evidence that the money market account was held by defendant and the decedent in joint tenancy with the right of survivorship. After reviewing the evidence, we cannot say that the trial court's determination was against the manifest weight of the evidence.

¶ 23     Once an account is deemed to conform to the Act, this compliance with statutory requirements "creates a presumption that those furnishing consideration for the creation of such interests *intend to make a gift* to those who furnish less than their share or no consideration." (Emphasis added.) *In re Estate of Lewis*, 193 Ill. App. 3d 316, 319 (1990) (citing *Murgic v. Granite City Trust & Savings Bank*, 31 Ill. 2d 587, 589 (1964)). The burden then shifts to the party questioning the gift to prove by clear and convincing evidence that a gift was not intended. *Lewis*, 193 Ill. App. 3d at 319 (citing *Murgic*, 31 Ill. 2d at 589). The burden switches to the party challenging the presumption of a gift because "[t]he legislative policy to treat the joint account as a useful technique for transferring intangibles dictates that the estate

- 7 -

or other person claiming against the survivor should have the burden of disproving intent on the part of the decedent." *Murgic*, 31 Ill. 2d at 590-91. Once the party challenging the ownership of the bank account has presented sufficient evidence to overcome the presumption of a gift, the presumption vanishes but the burden of proof remains on the party challenging the ownership. *Lewis*, 193 Ill. App. 3d at 319 (citing *Murgic*, 31 Ill. 2d at 591). The determination as to the sufficiency of the rebuttal evidence is a determination to be made by the trial court. *Id.* at 320.

¶ 24     A party can use evidence establishing that a joint account was used as a convenience account to overcome the presumption of a gift. See, *e.g.*, *Vitacco v. Eckberg*, 271 Ill. App. 3d 408, 412 (1995) (only a clear and convincing showing that a joint account was used as a convenience account will overcome the presumption of a gift); *In re Estate of Blom*, 234 Ill. App. 3d 517, 519-20 (1992) (party challenging the transfer must show that the account was created only as a convenience). A convenience account is "an account that is nominally a joint account, but is intended to allow the nominal joint tenant to make transactions only as specified by, and on behalf of, the account's creator." *In re Estate of Shea*, 364 Ill. App. 3d 963, 969 (2006). The typical purpose of such an account is to allow the nominal joint tenant to pay the true owner's bills while the true owner is unable to do so. *Id.* at 969. A court can determine an account is for convenience when "the creator did not intend the other tenant to have any interest, present or future, but had some other intent in creating the account." *In re Estate of Harms*, 236 Ill. App. 3d 630, 634 (1992). An example of a convenience account is "where the creator only wanted the other tenant to write checks at the creator's direction, and not to have any share in the account during the creator's life or on the creator's death." *Id.*; *Vitacco*, 271 Ill. App. 3d at 412.

¶ 25     Plaintiff's second contention on appeal is that the trial court's determination that plaintiff failed to rebut the presumption of a gift was against the manifest weight of the evidence. Plaintiff claims that even if the money market account complied with the Act, the presumption of a gift was rebutted because the decedent intended to retain use of the funds during her lifetime, even if she intended them to go to the defendant upon the decedent's death. As evidence that the decedent only intended to grant defendant a future interest in the money market account, plaintiff points to defendant's testimony that the decedent told defendant the money was hers when she "croaked" and to defendant's testimony that she felt the money in the account was her aunt's as long as her aunt was alive. Plaintiff also claims that the decedent had the defendant placed on the account so that the defendant could pay the decedent's bills when the decedent was unable to do so and therefore the money market account was a "convenience account" and not a true joint account with the right of survivorship.

¶ 26     In making this argument, plaintiff relies upon *In re Estate of Shea*, 364 Ill. App. 3d 963, 964 (2006), in which the Second District of this appellate court held that a party rebuts the presumption of donative intent by showing with clear and convincing evidence that the account holder did not intend to make a present gift of the funds in an account. In *Shea*, a neighbor of a decedent appealed a ruling that the two bank accounts on which she was a joint tenant with decedent belonged to the decedent's estate. *Id.* The court upheld the trial court's finding that the account was for convenience only based on the facts that the decedent had conversations with others that he intended the accounts to be convenience accounts and the neighbor chosen was not his first choice as joint tenant, that the neighbor never contributed to either account or used the money in the accounts for herself while the decedent was alive but

instead only used the checking account to cover the decedent's expenses near his death, and that the neighbor could not provide any evidence that the decedent intended to make the funds as a gift.[1] *Id.* at 967.

¶ 27　In reaching this conclusion, the court in *Shea* considered the respondent's contention that the use of a joint account as a convenience account leaves open the possibility that the creator of the account intended the nominal joint tenant to have the funds upon his or her death. *Id*. at 969. The court found this argument to be a "misreading of *Murgic*." The court acknowledged the principle that when a sole owner of a bank account adds an apparent joint tenant to the account, the law presumes that the original owner intends a gift because " 'an instrument creating a joint account under the statutes presumably speaks the whole truth.' " *Id*. (quoting *Murgic*, 31 Ill. 2d at 591). The court then interpreted this phrase as follows:

> "The plain sense of the court's phrase in *Murgic*, that 'an instrument creating a joint account under the statutes presumably speaks the whole truth,' is that the presumed gift was a present one, having as major conditions only those in the joint account agreement. Any kind of side agreement that significantly changes the ownership from the statutory joint tenancy is contrary to the presumption, because then the instrument would not be speaking the whole truth. If petitioner can show that decedent intended to retain the entire right to use the funds in the accounts during his life, even if he intended them to go to respondent at his death, that is enough to rebut the presumption.
>
> To expand on this, if the gift of an account is to take effect only on the creator's death, its ownership is different from that for which a joint account agreement provides–the function of a joint account agreement is to immediately share ownership. If the owner of an account intends to make a present transfer of a future interest in the account, *e.g.*, the remainder of the account upon the owner's death, that is also something for which an ordinary joint account agreement does not provide." (Emphases omitted.) *Shea*, 364 Ill. App. 3d at 970.

¶ 28　The court then noted that *Johnson v. La Grange State Bank*, 73 Ill. 2d 342 (1978), "appears to hold that the presumption of a valid gift created by a joint account agreement survives despite proof that the gift involved conditions not listed in the agreement." *Shea*, 364 Ill. App. 3d at 970. The court observed that "[a]lthough the decedent in *Johnson* required the defendant in that case to use two nominally joint bank accounts for the decedent's benefit while she was alive, the court held that the account agreements 'by their very terms indicated the existence of a valid [*inter vivos*] gift.' " *Id*. (quoting *Johnson*, 73 Ill. 2d at 368). The court also reviewed *Altieri v. Estate of Snyder*, 262 Ill. App. 3d 427, 432 (1992), in which the court found that certain accounts were true joint tenancies based upon evidence that the surviving joint tenant testified that the decedent referred to the accounts as belonging to the decedent and the surviving joint tenant and that the joint tenant also said she believed that the decedent wanted her to have the money when the decedent died. *Shea*, 364 Ill. App. 3d at 971. The court ultimately found that neither *Johnson* nor *Alteieri* altered its reading of *Murgic* and held that:

> "the relevant presumption is that the joint account agreement alone governs the ownership of a joint account, *i.e.*, speaks the whole truth. Thus, clear and convincing evidence that the joint tenants had any understanding other than that in the joint

---

[1]The decedent in *Shea* had approached another person to be put on the accounts, but that person was in too poor health to take on the responsibility. He also consulted his lawyer.

account agreement can defeat the presumption that the joint account agreement speaks the whole truth." (Emphasis omitted.) *Id*.

¶ 29 We find that the *Shea* court's reading and extension of *Murgic* is unwarranted and unpersuasive. This overly broad interpretation of the simple phrase "speaks for itself" would in effect overrule the decision in *Johnson* without our supreme court having done so itself. Instead, we find persuasive and adhere to the rule set forth in *Harms*, 236 Ill. App. 3d at 634-35. In that case, the Fourth District of this appellate court stated that a convenience account "is an account, apparently held in some form of joint tenancy, where in fact the creator did not intend the other tenant to have any interest, present or future, but had some other intent in creating the account." *Id*. at 634. On the other hand, the court described the essence of a joint account in the following manner:

> "A joint account is often used as a form of testamentary disposition, a will substitute, where the creator does not intend the other tenant to have any present interest, but does intend the other tenant to have the account on the creator's death. Such an account is a true joint tenancy account with the right of survivorship, whether or not the other tenant claimed any interest in the account during the creator's life. A joint account created as an alternate form of testamentary disposition is not a convenience account, at least not as far as the right of survivorship is concerned. It is illogical that an individual would place all of her substantial assets in joint accounts if she just wanted someone to relieve her of the day-to-day burden of writing checks." *Id*. at 634-35.

¶ 30 As the trial court observed in this case, the rule set forth in *Harms* has been cited to and relied upon by the First District and Second District of this appellate court. See *In re Estate of Flecken*, 266 Ill. App. 3d 1087, 1093-94 (1994); *In re Estate of Teall*, 329 Ill. App. 3d 83, 87 (2002). This rule is based on the premise that "a donor's intent to create a survivorship arrangement ' "is the essence of joint tenancy." ' " *Flecken*, 266 Ill. App. 3d at 1094 (quoting *Frey v. Wubbena*, 26 Ill. 2d 62, 72 (1962), quoting *In re Estate of Mueth*, 33 Ill. App. 2d 449, 451 (1962)). Our supreme court has relied upon this principle in rejecting an argument that an intention to use a joint tenancy as a testamentary disposition evidences a lack of donative intent. See *Frey*, 26 Ill. 2d at 71-72.

¶ 31 Applying these principles, the defendant in this case need not have claimed any interest in the money market account while the decedent was alive in order to claim an interest as a surviving joint tenant. See *Harms*, 236 Ill. App. 3d at 634-35; *Flecken*, 266 Ill. App. 3d at 1094. Likewise, the presumption of a gift is not rebutted even if the decedent did not intend defendant to have any present interest in the account and only intended the defendant to have the account upon the decedent's death. The evidence shows that when the decedent was of sound mind and good health, she told defendant that the money market account would be hers when the decedent "croaked," evidencing the decedent's intent to give the account to defendant upon her death. The decedent also opened a third account at the bank on the same day she opened the checking account and money market account and named her brother and sister as joint tenants on the account. Defendant testified that the decedent told her this third account would be "theirs," meaning the decedent's brother and sister. This indicates the decedent was setting up the accounts as joint accounts with the intention of creating a testamentary disposition. This intent to create a right of survivorship in the other tenant is the essence of a joint tenancy and such intention to create future interests in these accounts does

not overcome the presumption of a gift. See *Frey*, 26 Ill. 2d at 72; *Harms*, 236 Ill. App. 3d at 634. Thus, the portions of defendant's testimony relied upon by plaintiff does not establish that the trial court's determination that plaintiff had failed to rebut the presumption of a gift was against the manifest weight of the evidence.

¶ 32    Plaintiff also draws similarities to *Shea* based on the fact that defendant was the decedent's neighbor, citing *Regelbrugge.* The *Regelbrugge* court held, however, that evidence that the surviving joint tenant lived in close proximity and used money for decedent's expenses but not for her own personal use is not enough to overcome the presumption of a gift. See *Regelbrugge*, 225 Ill. App. 3d at 597.

¶ 33    Plaintiff claims that the trial court's ruling was based on the mistaken belief that the money market account was not used to pay the decedent's bills when in fact the evidence shows that the money market account was also used to pay the decedent's bills. The "evidence" plaintiff refers to is that defendant admitted a statement contained in plaintiff's amended petition for a citation to recover assets that all of the decedent's living expenses were paid through "the accounts." However, the trial court could have reasonably concluded that such a broad statement did not establish which accounts were used to pay the decedent's expenses or that this statement established that the decedent's expenses were paid out of the money market account. Defendant testified at trial that from the time the accounts were opened until near the decedent's death, the decedent conducted most of her banking business and that only when she became ill did the decedent ask for defendant's help. Defendant also testified that she made approximately 10 to 15 transactions on the checking account on the decedent's behalf. There was no other evidence presented at trial indicating which, if any, of the decedent's living expenses were paid from either account. Plaintiff similarly claims that the money market account may have been created to replenish the checking account. However, this claim is pure conjecture as no evidence was presented that the money market account was ever used for such a purpose. Even if the money market account had been used to replenish the checking account, this would not necessarily establish that the decedent did not also intend the funds in the money market account to go to defendant upon her death.

¶ 34    Plaintiff lastly asserts that a note signed by the decedent in 2009 indicates that she intended to leave defendant $50,000 but not the $80,000 in the money market account. See *In re Estate of Blom*, 234 Ill. App. 3d 517, 519 (1992) (usually the intent of the funds' owner at the time he or she added a name to the account determines who owns it, but evidence of later events may be considered as bearing on the issue of intent).

¶ 35    At trial, defendant authenticated a note as being signed by and in the decedent's handwriting stating "I leave $50,000 to my niece Cynthia Stehlik 3833 South 58th Court Cicero, IL 60805," dated April 8, 2009. This note, however, was handwritten, was not witnessed or notarized, and therefore is not a valid will. See 755 ILCS 5/4-3 (West 2010) ("Every will shall be in writing, signed by the testator or by some person in his presence and by his direction and attested in the presence of the testator by 2 or more credible witnesses."). Even if it were a will, the nature of a joint tenancy is that title passes by operation of law to the survivor and a joint tenant cannot destroy a joint tenancy by later creation of a will. *Bonczkowski*, 13 Ill. 2d 443; *Dudek*, 201 Ill. App. 3d at 997. Plaintiff cites no authority that a handwritten note can destroy a validly created joint tenancy. Moreover, the note was written six years after the creation of the money market account and did not mention the Charter One Bank accounts or indicate from which source of funds the $50,000 was to be drawn. It is

possible that the decedent simply intended to make a separate gift of $50,000 to the defendant from her estate in addition to the money market account or that the decedent intended to make a gift to the defendant during her lifetime through this note. The trial court considered the note and the other evidence and found that plaintiff had failed to rebut the presumption of a gift. Considering all of the evidence, we cannot say that the court's determination was against the manifest weight of the evidence.

¶ 36      For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

¶ 37      Affirmed.