2025 IL App (2d) 240780
No. 2-24-0780
Opinion filed December 29, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| *In re* ESTATE OF DOROTHY J. FRAIN | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| | ) | |
| | ) | No. 24-PR-92 |
| | ) | |
| (Michael Frain, as Independent Administrator | ) | |
| of the Estate of Dorothy J. Frain, Petitioner- | ) | Honorable |
| Appellant, v. Antonio Villanueva, Respondent- | ) | Joseph M. Grady, |
| Appellee). | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Presiding Justice Kennedy and Justice Mullen concurred in the judgment and opinion.

**OPINION**

¶ 1     After Dorothy J. Frain's death, petitioner, Michael Frain, her brother and the independent administrator of the estate of Dorothy J. Frain (Estate), moved for turnover to the Estate of funds in a bank checking account. The trial court denied the Estate's motion, and the Estate appeals, arguing that, because the account's signature card was not signed by Dorothy, the account was an individual account and, therefore, respondent, Antonio Villanueva, was not a joint account holder with a right of survivorship in the account. We affirm.

¶ 2                                I. BACKGROUND

¶ 3                             A. Motion for Turnover

¶ 4     Dorothy J. Frain died intestate on February 12, 2024, at the age of 77. She was never married and had no children. Michael, her only surviving heir, was appointed independent administrator of the Estate on April 11, 2024.

¶ 5     On June 25, 2024, the Estate issued to Fifth Third Bank a subpoena for records concerning six accounts: three checking accounts (with account numbers ending in 1842, 1830, and 1871) and three savings accounts (with account numbers ending in 6693, 9269, and 1199).

¶ 6     On August 5, 2024, the Estate moved for a turnover order of the account ending in 1842. The Estate argued that a signature card for the account, which was dated December 5, 2017, showed that Dorothy was the sole owner of the account. It sought the balance in the account, which was $179,316.72 as of July 9, 2024.

¶ 7     On August 30, 2024, respondent, Antonio Villanueva, filed a response to the Estate's motion and a countermotion to unfreeze other accounts. He argued that the 1842 account was not Estate property and asserted that he and Dorothy were domestic partners for decades and had several accounts together, including the 1842 account. Villanueva alleged that he was added as a fellow account holder, noting the signature card, and argued the account was a presumptive gift.

¶ 8     In reply, the Estate argued that a signed writing is required for a bank account to be a joint account, no signed writing by both parties existed in this case, and the 1842 account was an individual account that was the Estate's property.

¶ 9     The signature card for the 1842 account is dated December 5, 2017, and contains Dorothy's name as the primary owner. In a section with options to check "NEW," "ADD," OR "REPL," there is a checkmark in a box next to "ADD." Account ownership is listed as "INDIVIDUAL." A

preprinted note referencing ownership provides that "Joint accounts shall be owned as joint tenants with rights of survivorship, not as tenancy by the entireties." Finally, in the signature area, Villanueva's signature appears above his name, and a "Signature on File" notation appears on the line above Dorothy's name.

¶ 10                                   B. Hearing

¶ 11                          1. Estate's Case—Michael Frain

¶ 12    Michael testified that Dorothy had six accounts at Fifth Third Bank. He reviewed account statements and/or signature cards for the accounts. The 1842 account's signature card states that the account type is individual and that Dorothy was the primary owner.

¶ 13    Addressing the account ending in 6693, Michael testified that there is no signature card on record for that account and no other underlying documents for it. The value of the account is $107,260. The account ending in 9269 also has no signature card. A statement for the account identifies the holders as Dorothy and Villanueva. Michael was unable to determine whether the account is jointly held. The value of the account is $220,671. The account ending in 1830 has a signature card, lists Villanueva as the primary owner, states that ownership is joint, and contains both signatures. The balance of the account is $5,892. The account ending in 1871 has a signature card, stating that ownership is joint and containing both Dorothy's and Villanueva's signatures. The account ending in 1199 has a signature card that states that Dorothy is the primary owner and the type of ownership is joint with right of survivorship. The signatures on the card are Dorothy's and Villanueva's signatures.

¶ 14    Villanueva and Dorothy lived together for decades. The last time Michael went to Dorothy's home was in the summer of 2023. They spoke on the porch. Michael denied that

Dorothy would not let him in the house; he testified that "from her body language, I could tell she didn't want me to go into the house." He could not recall when he had visited her prior to this visit.

¶ 15                    2. Villanueva's Case—Eduardo Gil

¶ 16    Eduardo Gil, an attorney, testified that Dorothy and Villanueva were his clients. He represented them in January 2023, after they were sued for partition. They jointly owned property with another couple that included Dorothy's late brother (who was deceased at the time Gil's representation commenced) and his wife. The suit involved three jointly-owned properties, and Gil litigated and negotiated a settlement. They had owned the properties for at least 20 years. As part of the settlement, various amounts were paid amongst the parties. Gil identified a check from his firm, dated March 6, 2024, (*i.e.*, after Dorothy's death) to Villanueva for $14,979.54. The memo line stated, "final disbursement." Villanueva's signature appeared on the back of the check. A deposit slip dated May 30, 2024, for the same amount and a bank statement showed that the amount was deposited into the 1842 account.

¶ 17    Gil further testified that Dorothy came to Gil's office with Villanueva and that Villanueva sometimes went to Gil's office without Dorothy (before her death). Gil frequently spoke to Dorothy on the phone. He understood from their conversations that it was difficult for her to move around; thus, they communicated on the phone. Gil also understood that Dorothy and Villanueva had been together for about 40 years. On March 6, 2024, Dorothy was alive, according to Gil. (She actually passed away on February 12, 2024.)

¶ 18                            3. Justin Lunsford

¶ 19    Justin Lunsford, a retail risk manager for Fifth Third Bank, testified that he oversees 2 regions and 31 bank locations, auditing the locations to ensure accounts conform to bank core standards. He has worked at Fifth Third Bank for over 11 years.

¶ 20    Lunsford testified that a joint account is an account held by two people, where, if one person dies, it becomes the property of the other person. At the bank, if there are two signers, each of them has equal access to the account and either of them could add or take out money from the account. "[T]o me, when one person dies, the other person is still living, that person now is the sole owner of the account."

¶ 21    The account ending in 1199 is a joint account. Dorothy and Villanueva came to the bank on October 8, 2016, and opened the account together and both signed the signature card. The account ending in 9269 was opened on September 14, 2006, and does not have a signature card. The file states that it is a joint account because the bank's system has both names as account owners. Lunsford explained that, in 2006, the bank did not electronically image signature cards; its retention period was 84 months (*i.e.*, seven years). He checked the account maintenance history, and there had been no activity. He interpreted this to mean that the account was opened at the same time; that is, no name was added later, and Dorothy and Villanueva opened the 9269 account together in 2006.

¶ 22    Next, addressing the account ending in 6693, Lunsford testified that it was opened on August 26, 1989, and it does not have a signature card. Based on his review of the account, it was jointly held, and his maintenance-history review did not show when Villaneuva was added to the account; thus, he concluded that Villanueva was on the account "for a long time."

¶ 23    On July 26, 2014, the accounts ending in 1871 and 1830 were opened. Their signature cards contain two signatures and reflect that they were joint accounts. Dorothy was the primary owner of the 1871 account, and Villanueva was the primary owner of the 1830 account. The tax form 1099 is sent to the primary owner, whose social security number is tied to the account. The account ending in 2119 was also opened on that date, and it is a joint account, as both signatures

appear on the card. Dorothy is listed as the primary owner; Lunsford believed that it was probably tied to her social security number. When asked if the primary owner designation was accurate, Lunsford replied, "I think that it should say joint. Employees type these up manually. *** So, certainly, someone could have put something incorrect in there. But the fact that both of the signatures are on there is what would make me believe that it's a joint account."

¶ 24　Next, addressing the 1842 account at issue in this appeal, Lunsford testified that the account was originally opened on February 1, 1982. The bank does not have the original signature card. A December 5, 2017, signature card states that ownership is individual. This is a mistake/clerical error, according to Lunsford, because there is a checkmark in the "ADD" box, which means that a signer was added. The card contains Villanueva's signature and, on the line where Dorothy would have signed, it states "Signature on File." A signature-on-file notation is used when someone is not present and/or present and the bank already has their signature.

> "I can't tell one way or the other. Obviously, I wasn't there. This would maybe make me think that the account was already opened primarily in Dorothy's name. They were adding [Villanueva] on on this date. And we didn't obtain another signature because there was probably an assumption that our signature card was on file due to the time frame that this account was opened."

The fact that it says that the signature is on file does not change the nature of the card because, in the bank's eyes, the account was already open. "So we already obtained their signature at some point in time. I certainly think it would have been a best practice to obtain it that day but—."

¶ 25　Lunsford further testified that there are circumstances where the bank has a good relationship with a customer who is not mobile, and it either goes to them, or asks them security questions and has someone else come in. Standard practice is for both people to be present and

sign the signature card, but there have been circumstances where Lunsford has gone to nursing homes or other places to obtain a signature.

¶ 26    Lunsford opined that the 1842 account was a joint account from December 5, 2017, up until Dorothy's date of death. Villanueva was a signer and owner on the account since 2017.

¶ 27    Next, addressing the check to Villanueva for $14,979 from Gil's firm, Lunsford testified the check was deposited into the 1842 account on May 30, 2024, after Dorothy's death. The deposit was accepted because Villanueva was believed to be the owner of the account.

¶ 28    Lunsford identified withdrawals by Villanueva from the 1842 account prior to and after Dorothy's death, specifically, a January 26, 2024, withdrawal of $1,000; a February 16, 2024, debit of $5,000; and withdrawals of $900 and $1,000 on May 30, 2024.

¶ 29    On cross-examination, Lunsford testified that the 1842 account is a joint account based on the fact that Villanueva was added as a signatory to the account. Also, in the bank's system, he is shown as a joint owner, even though the signature card states "INDIVIDUAL."

¶ 30    Lunsford does not have actual knowledge as to the circumstances surrounding Villanueva's addition as a signatory. Lunsford is unaware if Dorothy was present on December 5, 2017, when Villanueva was added as a signatory; she might not have been there. Typically, the bank would require that both clients be present and have them sign in its presence. Dorothy did not sign in anyone's presence in 2017.

¶ 31    Lunsford concluded that the term "INDIVIDUAL" appears on the signature card in error. Employees make typos and mistakes, he explained. He was not present when any of the accounts discussed in this case were opened, he never met Villanueva or Dorothy, and he has no personal knowledge as to Dorothy's intent.

¶ 32    On redirect examination, Lunsford testified that, based on his review of all of Dorothy's accounts, the signature card, the fact that Villaneuva had been a signer on the 1842 account for seven years, and that the bank allowed him to deposit and withdraw from the account, Villaneuva was an account owner.

¶ 33                              4. Trial Court's Ruling

¶ 34    The trial court denied the Estate's motion for turnover of the 1842 account, ordering that the account be unfrozen and that the bank turn over the funds to Villanueva. The Estate appeals.

¶ 35                              II. ANALYSIS

¶ 36    The Estate argues that Villanueva failed to prove by clear and convincing evidence that the 1842 account, which was opened in 1982 as an individual account, was a joint account with a right of survivorship. Thus, the Estate asserts, the trial court's finding that Villanueva established a joint account with survivorship rights was against the manifest weight of the evidence. For the following reasons, we reject the Estate's arguments.

¶ 37    The trial court is in a superior position to observe witness demeanor, to judge credibility, and to weigh testimony and other trial evidence. *In re Estate of Bennoon*, 2014 IL App (1st) 122224, ¶ 72. We will not set aside a judgment following a bench trial unless the judgment is against the manifest weight of the evidence. *Id.* ¶ 70; see *In re Estate of Weisberg*, 62 Ill. App. 3d 578, 588 (1978) (court's finding that certain property belongs to a particular party is reviewed under manifest-weight standard). A judgment is against the manifest weight of the evidence where it is unreasonable. *Bennoon*, 2014 IL App (1st) 122224, ¶ 70.

¶ 38    One essential characteristic of a joint tenancy is the right of survivorship or the right of the last surviving joint tenant to take the whole. *Konfrst v. Stehlik*, 2014 IL App (1st) 132113, ¶ 12. "Upon the death of a joint tenant, title passes by operation of law to the survivor." *Id.* Thus, "the

entire property goes to the surviving tenant and cannot be inherited by another through a will or as part of the decedent's estate." *Id.*

¶ 39 Section 2 of the Joint Tenancy Act (Act) governs joint tenancies in personal property. 765 ILCS 1005/2 (West 2022). It provides that,

"[e]xcept as to executors and trustees, and except also where by will or other instrument in writing expressing an intention to create a joint tenancy in personal property with the right of survivorship, the right or incident of survivorship as between joint tenants or owners of personal property is hereby abolished, and all such joint tenancies or ownerships shall, to all intents and purposes, be deemed tenancies in common." *Id.*

¶ 40 "Thus, for parties outside executors or trustees, a written instrument must be created in order for a joint tenancy with right of survivorship to be created, or else the owners of joint property will be deemed tenant[s] in common." *Konfrst*, 2014 IL App (1st) 132113, ¶ 13; see *In re Estate of Wrage*, 194 Ill. App. 3d 117, 123-24 (1990) ("The minimum necessary, then, is a signed writing stating that the account is held in joint tenancy with rights of survivorship."). The statute does not "impair or affect the rights, privileges and immunities" as to the following:

"When a deposit in any bank or trust company transacting business in this State has been made or shall hereafter be made in the names of 2 or more persons payable to them when the account is opened or thereafter, the deposit or any part thereof or any interest or dividend thereon may be paid to any one of those persons whether the other or others be living or not, and *when an agreement permitting such payment is signed by all those persons at the time the account is opened or thereafter* the receipt or acquittance of the person so paid shall be valid and sufficient discharge from all parties to the bank for any payments so made." (Emphasis added.) 765 ILCS 1005/2(a) (West 2022).

¶ 41    Thus, bank accounts in the name of two persons, where the funds are payable to either party whether the others be living or not, are valid joint tenancies with right of survivorship, "*if* an agreement permitting such payment is signed by the persons named on the account at the time the account is created or if such a document is signed by the persons named on the account thereafter to that effect." (Emphasis in original.) *Konfrst*, 2014 IL App (1st) 132113, ¶ 14.

¶ 42    "At the creation of a statutory joint tenancy, a presumption of donative intent arises and a party claiming adversely to the instrument creating the joint account has the burden of proving by clear and convincing evidence that a gift was not intended." *In re Estate of Harms*, 236 Ill. App. 3d 630, 634 (1992); see *In re Estate of Pokorney*, 99 Ill. App. 2d 230, 233 (1968) (if the joint tenancy is created in accordance with the statutory provisions, the presumption of donative intent arises). Clear and convincing evidence has been defined as that quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question. *First National Bank of Chicago v. King*, 263 Ill. App. 3d 813, 819 (1994). The intent of the owner of the funds at the time the joint account was created determines whether the account is a convenience account (*i.e.*, "an account that [was] nominally a joint account, but [was] intended to allow the nominal joint tenant to make transactions only as specified by, and on behalf of, the account's creator" (*In re Estate of Shea*, 364 Ill. App. 3d 963, 969 (2006))) or a true joint tenancy account; however, in determining the creator's intent, the finder of fact may properly consider events occurring after the creation of the account. *Vitacco v. Eckberg*, 271 Ill. App. 3d 408, 412 (1995). "The form of the agreement is not conclusive regarding the parties' intentions (*In re Estate of Schneider*, 6 Ill. 2d 180, [187 (1955)]) and each case must be evaluated on its own facts and circumstances." *In re Estate of Kaplan*, 219 Ill. App. 3d 448, 458 (1991).

¶ 43    Here, the Estate argues that no evidence pointed to the existence of a signed agreement expressly providing that the 1842 account had a right of survivorship. First, it contends that the signature card for the account does not meet the statute's minimum requirement and does not establish a survivorship right. Second, it contends that the other accounts' signature cards demonstrate that the bank, Dorothy, and Villanueva knew how to establish a right of survivorship and opened other accounts with such a right when they intended to do so. Finally, the Estate asserts that no other evidence was presented that could have established Dorothy's intent to create a right of survivorship in the 1842 account.

¶ 44    As to the Estate's first argument, it points to the fact that Dorothy's signature does not appear on the signature card, the card identifies the account as an individual account, and the card does not state that the account is subject to a right of survivorship. No other agreement, the Estate further notes, was presented to show that Villanueva had a right of survivorship. It reads the statute as requiring Dorothy's signature at the time the account was changed to permit a right of survivorship. Merely pointing to a signature obtained at an earlier time, the Estate argues, is insufficient. The Estate also contends that Lunsford's testimony that two signers on an account reflects that the account was created with survivorship rights is incorrect and conflicts with the statute's provision that express language creating a survivorship right is necessary to create a joint account with a right of survivorship. The Estate also asserts that Lunsford's conclusion that the signature card's identification of the account type as "INDIVIDUAL" was a clerical error was also wrong and pure conjecture, and it notes that he acknowledged that he was not present when the 1842 signature card was created.

¶ 45    The Estate's final argument is that no other evidence was offered that could have established Dorothy's intent to create a right of survivorship in the 1842 account. It contends that

only circumstantial evidence of a handful of deposits and withdrawals was offered. It argues that all but one of the transactions occurred after Dorothy's death and have no bearing on her intent to establish a joint account with right of survivorship. As to the transaction prior to Dorothy's death, Villanueva signed a withdrawal slip dated January 26, 2024, for $1,000 from the 1842 account. The Estate argues that no evidence was offered as to whether Dorothy knew about or permitted such use, nor was there any explanation of Dorothy's or Villanueva's understanding of Villanueva's use of the account.

¶ 46     We conclude that the trial court's finding was not against the manifest weight of the evidence. As noted, at a minimum, an agreement with both parties' signatures is required to meet the Act's requirements. 765 ILCS 1005/2 (West 2022); see *Doubler v. Doubler*, 412 Ill. 597, 601 (1952) (where husband had bank add wife's name on a passbook to his bank account and note that it was payable with survivorship rights (and bank subsequently changed its ledger to reflect the same), but where no agreement permitting payment to survivor was ever signed by either party, changing of name on passbook by a third party at the direction of one of the parties alone did not satisfy statutory requirements; agreement signed by both parties permitting payment to the survivor was required in order to create survivorship rights). Further, the existence of a signed agreement stating that property is held in joint tenancy with rights of survivorship "can be proved by evidence other than a signature card," including by the facts surrounding the creation of the account and the circumstances and events occurring thereafter, with relevant factors including the exercise of authority and control over the account and the survivors' understanding of the account. *In re Estate of Regelbrugge*, 225 Ill. App. 3d 593, 596-97 (1992).

¶ 47     In cases where joint tenancies with survivorship rights have been found, courts have placed weight on banks' treatment of the relevant account. See, *e.g.*, *Konfrst*, 2014 IL App (1st) 132113,

¶¶ 20-22 (affirming determination that decedent's money market account was a joint tenancy with right of survivorship, where the defendant niece testified that decedent opened a joint account with her, they signed necessary papers for it, she signed a document similar to a signature card as part of the paperwork that included survivorship language, bank statements listed both their names, and niece submitted into evidence an undated deposit account application form with both parties' information as co-applicants and their signatures; finally, a bank representative testified that the fact that both names were on bank statements showed it was a joint account with the right of survivorship and that it could not have been any other type of account); *Harms*, 236 Ill. App. 3d at 637-38 (checking and money market accounts met statutory requirements for survivorship accounts, where they were opened in the names of two or more persons, were payable to any of them when the account was opened or thereafter, and were created pursuant to an agreement signed by all the parties at the time the account was opened (where neither individual nor joint boxes had been checked); also testimony showed that bank clerks did not pay attention to different forms they used and inserted "or" between account holding names when a joint tenancy with right of survivorship was intended); *Regelbrugge*, 225 Ill. App. 3d at 596-97 (reversing trial court and holding that account at issue was a joint account, where bank records, but not a signature card, showed that decedent's sister and niece had been later added as parties to an account initially opened as an individual account; decedent's sister testified to signing a signature card, to keeping a savings book for the account, and depositing funds into the account; and a savings book showing both decedent's and his sister's names was admitted into evidence; bank also produced records showing that it began sending sister account statements shortly after she was added to the account).

¶ 48    In contrast, survivorship rights have not been found to exist where, for example, a relevant agreement did not indicate a joint tenancy or survivorship rights. See, *e.g.*, *Wrage*, 194 Ill. App.

3d at 124 (affirming judgment on the pleadings and holding that no joint tenancy was created, where the decedent's granddaughter was placed on an existing checking account pursuant to a handwritten memorandum that she was an authorized signature, bank placed a check mark in box labeled power of attorney on its account card, and decedent executed written power of attorney with respect to granddaughter; granddaughter's name on account "was restricted to her acting under the power of attorney" and nothing reflected existence of a joint tenancy; thus, agency relationship terminated upon death of the principal); see also *Frey v. Wubbena*, 26 Ill. 2d 62, 74 (1962) (savings account in several names separated by "or" in title did not create a right of survivorship, where it did not indicate intention to create a right of survivorship and where there was no deposit agreement providing for joint tenancy).

¶ 49     Here, both the signature card and other evidence reasonably showed that a joint tenancy with survivorship rights was created. As to the signature card, the evidence showed that the signature-on-file notation on the card was an accepted bank practice. Specifically, Lunsford testified to the bank's practices, explaining that a signature-on-file notation is used when someone is not present to sign and the bank already has their signature in its records. He interpreted the use of the notation in this case as reflecting that the bank already had Dorothy's signature on file because the account had initially been opened in Dorothy's name. He also stated that, where customers with mobility issues cannot come to the bank to sign a document, an acceptable practice is to ask them security questions and have someone else come to the bank. Although Lunsford did not have personal knowledge as to the circumstances surrounding Villanueva's addition to the 1842 account, Gil, Dorothy and Villanueva's attorney, testified that he often spoke to Dorothy on the phone because she had difficulty moving around and that only Villanueva would come to Gil's office. Thus, a reasonable inference from this evidence was that Dorothy was not present at the

bank in 2017 when Villanueva was added to the 1842 account but that the bank followed an acceptable practice to ensure its actions reflected Dorothy's intent, which was to add Villanueva as a joint tenant, and added the "Signature on File" notation—effectively the same as Dorothy's signature and satisfying the statutory requirement.

¶ 50    In addition to the signature card's signature notations, other evidence reasonably showed that the account was a joint account. As noted, the existence of a signed agreement reflecting a joint tenancy may be proved by evidence other than a signature card, such as the facts surrounding the creation of the account and the circumstances and events occurring thereafter, with relevant factors including the exercise of authority and control over the account and the survivors' understanding of the account. *Regelbrugge*, 225 Ill. App. 3d at 596-97. Unlike here, there was no signature card reflecting a joint tenancy in *Regelbrugge*, but the case is instructive for illustrating how courts assess other evidence of a joint tenancy agreement. There, the petitioner, the decedent's son and administrator of his estate, sought to recover funds from a bank account that passed by survivorship to the respondents, the decedent's sister and his former wife. Several bank documents were presented and testified to by a bank cashier, including a microfiche copy of the account signature card, which contained the decedent's signature and reflected that the account was opened in 1967 in his name only, and a copy from the bank's microfilm records containing both the decedent's and his sister's signatures and accompanied by a statement that the sister was made a joint tenant to the account in 1984. No card was produced bearing the decedent's sister's signature. The decedent's sister testified that she signed a signature card for the account in 1984, that both she and the decedent kept a savings book for the account, and that she deposited funds into the account and understood that she could make withdrawals during her brother's life because both of their names were on the account. The savings books showed both the decedent's and his sister's

names, and another bank cashier testified that, in 1984, the bank began sending account statements to the decedent's sister. This court held that the trial court's finding that the account was estate property was against the manifest weight of the evidence. *Id.* at 598. We concluded that the decedent intended to add his sister as a joint tenant and effectuated this by having her sign a signature card that stated that the account was a joint tenancy. *Id.* at 597. This court also noted that the only evidence indicative of a lack of donative intent was that the decedent's sister did not withdraw funds for her personal use during the decedent's life, but we added that this was not fatal to the respondents' case because individuals creating joint accounts often do so with the hope that the donee will not access the funds until after the donor's death. *Id.* (citing *In re Estate of Lewis*, 193 Ill. App. 3d 316, 323 (1990)).

¶ 51    Similarly, here, the evidence concerning the account's ownership type and other evidence reasonably showed that the account was a joint account with survivorship rights. Although the signature card describes the ownership as "INDIVIDUAL," Lunsford testified that this was a clerical error because the "ADD" box was checked, Villanueva signed the card, and the bank's system showed him as a joint owner of the account. Lunsford testified that a joint account includes survivorship rights, which is consistent with the note on the signature card, which provides that, if ownership is joint, then "[j]oint accounts shall be owned as joint tenants with rights of survivorship, not as tenancy by the entireties." Lunsford also explained that the "ADD" box being marked, Villanueva's signature, and Villanueva being shown as a joint owner in the bank's system reflect that he was added to the account in 2017. The "INDIVIDUAL" ownership notation, he explained, is, thus, a clerical error. Overall, he opined that, based on his review of all of Dorothy's accounts, the signature card, the fact that Villanueva was a signer on the 1842 account for seven years and that the bank allowed him to make transactions on the account, Villanueva was an

account owner. This was sufficient testimony from which the trial court could reasonably find that the 1842 account was a joint account with survivorship rights. *Konfrst*, 2014 IL App (1st) 132113, ¶ 20 (affirming finding of joint tenancy with survivorship right and relying in part on bank employee's testimony that the fact that both the decedent's and the defendant's names were on bank statements reflected that it was a joint account with survivorship rights and that it could not have been any other type of account).

¶ 52 Further, pursuant to the bank's practices, as testified to by Lunsford, Villanueva was a joint owner of the 1842 account since 2017. The bank also allowed Villanueva to complete at least one transaction on the account prior to Dorothy's death, a withdrawal, which was indicative of his ownership interest. He also made a large deposit after Dorothy's death, and the deposit was accepted, according to Lunsford, because Villanueva was believed to the owner of the account.

¶ 53 We reject the Estate's argument that documentation for Dorothy's other accounts at the bank reflect that the bank, Dorothy, and Villanueva knew how to establish joint accounts with survivorship rights when they intended to do so. To the extent the other accounts are relevant, we note that Lunsford testified that both Dorothy and Villanueva signed the signature cards for three accounts (those ending in 1830, 1871, and 1199) when they were opened in 2014 and 2016. However, Dorothy's health status when the cards were signed is unknown. It is possible that her mobility declined after this time, as Villanueva was added to the 1842 account in 2017. Thus, this evidence is not entitled to great weight, other than to show that Dorothy and Villanueva had many jointly held accounts at the bank, which supports the court's determination that the 1842 account was jointly held with survivorship rights.

¶ 54 In summary, the trial court's denial of the Estate's motion for turnover of the funds in the 1842 account was not against the manifest weight of the evidence.

¶ 55                                   III. CONCLUSION

¶ 56    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 57    Affirmed.

*In re Estate of Frain*, **2025 IL App (2d) 240780**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 24-PR-92; the Hon. Joseph M. Grady, Judge, presiding. |
| **Attorneys for Appellant:** | Mark L. Evans, of Levin Ginsburg, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Scott P. Larson, of Vanek, Larson & Kolb, LLC, of St. Charles, for appellee. |